# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-600 JGB (DTBx)** | Date | May 7, 2018 |
| Title | *WB Music Corp., et al. v. Royce Int'l Broadcasting Corp., et al.* | | |

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Sharon Douglass Mayo | Dariush G. Adli |
| Kathryn W. Hutchinson | Jeremy Lee Ross |
| Jackson P. Wagener | Drew Harris Sherman |

**Proceedings:** Order (1) GRANTING Defendants' Ex Parte Application for Leave to File a Sur-Reply (Dkt. No. 184); (2) GRANTING Plaintiffs' Motion for Permanent Injunction (Dkt. No. 171); and (3) ENJOINING Defendants' Infringing Conduct

Before the Court is Plaintiffs' motion for a permanent injunction against Defendants. ("Motion," Dkt. No. 171.) On May 7, 2018, the Court held a hearing on the Motion. After considering the oral argument and papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion and ENJOINS Defendants as set forth below.

## I.  BACKGROUND

Plaintiffs filed their Complaint on April 1, 2016, alleging eleven causes of action for willful copyright infringement against Defendants. ("Complaint," Dkt. No. 1.) On June 21, 2017, the Court granted Plaintiffs' motion for partial summary judgment, finding Defendants jointly and severally liable for eleven acts of copyright infringement. (Dkt. No. 79.) On March 6, 2018, a jury trial began on whether Defendants' infringements were willful and the amount of statutory damages to be awarded to Plaintiffs. (Dkt. No. 148.) On March 13, 2018, the jury returned a verdict in favor of Plaintiffs, found Defendants had willfully infringed, and assessed damages totaling $330,000.00. (Dkt. No. 155.)

Plaintiffs filed their instant Motion on March 26, 2018. (Dkt. No. 171.) Plaintiffs seek an injunction preventing Defendants from publicly performing, or causing or permitting to be

publicly performed, any copyrighted musical composition owned by Plaintiffs or in the American Society of Composers, Authors and Publishers ("ASCAP") repertory without first obtaining proper authorization to do so. (Mot. at 2.) Defendants opposed the Motion on April 16, 2018. ("Opposition," Dkt. No. 182.) Plaintiffs replied on April 23, 2018. ("Reply," Dkt. No. 182.)

## II. LEGAL STANDARD

Section 502(a) of the Copyright Act authorizes a court to grant injunctive relief as "it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "A permanent injunction is an extraordinary remedy that may only be awarded upon a clear showing that the moving party is entitled to such relief." Server Tech., Inc. v. Am. Power Conversion Corp., 2017 WL 2181101, at *3 (D. Nev. May 12, 2017) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)); see also Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010). To obtain a permanent injunction after a finding of infringement, the moving party must satisfy a four-factor test: (1) it has suffered irreparable injury; (2) remedies at law are inadequate; (3) the balance of hardships favors an equitable remedy; and (4) that the public interest would not be disserved by a permanent injunction. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

## III. DISCUSSION

### A. Sur-Reply

On April 27, 2018, Defendants filed an ex parte application for leave to file a sur-reply. ("Sur-reply Motion," Dkt. No. 184.) On April 30, 2018, Plaintiffs opposed the ex parte application. ("Sur-reply Opposition," Dkt. No. 185.) Courts generally view motions for leave to file a sur-reply with disfavor. Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005). However, permitting the filing of a sur-reply is within the discretion of the district court. Schmidt v. Shah, 696 F. Supp. 2d 44, 60 (D.D.C. 2010) ("The decision to grant or deny leave to file a surreply is committed to the sound discretion of the court."); L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply.") "[T]his discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)).

Defendants contend Plaintiffs' reply contains new facts and legal arguments outside the scope of their Opposition. (Sur-reply at 3-5.) Defendants train most of their attention on Plaintiffs' Reply at footnote 2, which contains references to Defendants' negotiations with ASCAP regarding disputes over their license fees. (Id. at 3.) Plaintiffs argue the evidence was not new because it was based on exhibits admitted at trial. (Sur-reply Opp'n at 1.) While the Court agrees with Plaintiffs that Defendants' Opposition centers on the idea of a fee dispute, the Court finds the Reply contains new evidence not introduced in their Motion or addressed in

Defendants' Opposition. Accordingly, the Court GRANTS Defendants' ex parte application and considers their sur-reply ("Sur-reply," Dkt. No. 184-2.)

**B. Irreparable Harm**

Irreparable harm cannot be established solely on the fact of past infringement. Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 11214 (C.D. Cal. 2007). Nor does the "mere likelihood of future infringement" allow for an inference of irreparable harm. Id. at 1215. Intangible injuries support a finding of irreparable harm. See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatned loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); Grokster, 518 F. Supp. 2d at 11215 (noting irreparable harm such as loss of market share or reputational harm may stem from the infringement itself). Nonetheless, the infringement itself may be sufficient to constitute irreparable harm when it harms a plaintiff's ability to enforce its exclusive rights, coincides with an actual tangible threat of future infringement, or may render the infringer unable to pay damages. See, e.g., Brighton Collectibles, Inc. v. Pedre Watch Co., Inc., 2013 WL 5719071, at *4 (S.D. Cal. Oct. 21, 2013) (finding plaintiff did not satisfy burden of showing actual tangible threat of future infringement where plaintiff only asserted defendant was likely to infringe again); Grokster, 518 F. Sppp. 2d at 1217-1219 (finding irreparable harm where defendant was likely unable to pay for past and/or future infringements and the scale of infringement eviscerated plaintiff's rights).

Plaintiffs assert they will suffer irreparable harm due to Defendants' ongoing infringement of songs in the ASCAP repertory. (Mot. at 8.) In support of their continuous infringement contention, Plaintiffs submit a declaration by Oleksander Kuzyszyn, Assistant Vice-President of ASCAP's Performing Rights Group. Kuzyszyn avers that Defendants infringed on nine musical compositions owned by ASCAP members after the Court's June 21, 2017 order holding Defendants liable for infringing on the eleven songs at issue here. (See Kuzyszyn Decl. ¶¶ 10-11, Dkt. No. 171-2.) In addition, Plaintiffs highlight Defendants' own declaration that cites approximately 60% of the songs broadcast on their radio stations as part of the ASCAP repertory. (Reply at 6; Stolz Decl. ¶ 3, Dkt. No. 182-1.)

Defendants argue there is no irreparable harm because, unlike in Grokster, there are no concerns for induced infringement on Plaintiffs' copyrights or an erosion of Plaintiff's copyrights. (Opp'n at 5.) Defendant also contends that because it has requested a license in accordance with the Consent Decree establishing the ASCAP licensing system, there can be no irreparable harm. (Id. at 7.)

Much of Defendants' Opposition relies upon provisions in the Consent Decree, and the Court considers its potential implications first. The most recent version of the Consent Decree is set forth in United States v. ASCAP, 2011 WL 1589999 (S.D.N.Y. June 11, 2011). As the Second Circuit explained:

> When a music user requests "a license for the right of public performance of any, some or all of the works in the ASCAP repertory," ASCAP is required to notify the user of what it deems to be a reasonable fee for the license requested. [Consent Decree] § IX(A). If certain prescribed periods of time elapse without the parties reaching an agreement, each party is granted the right to petition the United States District Court for the Southern District of New York, which retained jurisdiction, to set a reasonable fee. Id. §§ IX(A), XIV. While the rate determination is pending, the license applicant "shall have the right to perform any, some or all of the works in the ASCAP repertory to which its application pertains." Id. § IX(E).

Pandora Media, Inc. v. American Soc. Of Composers, Authors & Publishers, 785 F.d3 73, 76 (2d Cir. 2015.) Contrary to Defendants' argument, the right of the license applicant to perform ASCAP works does not vest the moment the user requests a license from ASCAP. Rather, as the Second Circuit identifies, the right commences after the relevant time periods of party negotiations elapse, and once the applicant petitions the Southern District of New York for a fee determination. Id.

Defendants applied to ASCAP for a license on April 16, 2018. (Adli Decl. ¶ 2, Dkt. No. 182-2; Ex. C, Adli Decl.) Under the Consent Decree, at least sixty days must elapse during which the parties attempt to reach an agreement on a license fee, and if they are unable to, then the music user can apply to the Southern District of New York for a fee determination. (Ex. C. at 115-116, Dkt. No. 125-2.) Therefore, Defendants are not yet able to apply to the Southern District of New York for a fee determination, and the right to perform ASCAP works while the rate determination is pending has not yet attached.

Moreover, as Plaintiffs note in their Reply, ASCAP is not required to issue a license to a music user in material breach and default for failing to pay ASCAP license fees. (Reply at 1.) The Consent Decree § VI provides:

> ASCAP is hereby ordered and directed to grant to any music user making a written request therefor a non-exclusive license to perform all of the works in the ASCAP repertory; provided, however, that ASCAP shall not be required to issue a license to any music user that is in material breach and default of any license agreement by failing to pay to ASCAP any license fee that is indisputably owed to ASCAP.

(Dkt. No. 125-2 at 111-112.) In their sur-reply, Defendants argue that there is no amount indisputably owed ASCAP from 2009 to 2011 because Defendants contested whether they should be categorized as "new" or "existing" stations. (Sur-reply at 5.) However, the Court has already found that Defendants last paid licensing fees to ASCAP around August 2010, and that their ASCAP license was terminated in August 2012. (Dkt. No. 79 at 5.) Upon termination of Defendants' licenses, ASCAP found Defendants had failed to "cure the existing default." (Ex. 5, Dkt. No. 68-9.) Even if the Court were to assume that Defendants' request to be treated as

"new stations" created a dispute over licensing fees from 2009-2011, Defendants make no argument regarding the 2012 determination of fees. (See Sur-reply.) Thus, for at least a portion of the two-year period between August 2010 and August 2012, Defendants were in default and owed ASCAP license fees. Consequently, Defendants are not automatically entitled to an ASCAP license. In sum, Defendants' reliance on the Consent Decree is unavailing.

Plaintiffs have made a sufficient showing of irreparable injury. At trial, the jury found Defendants willfully infringed on Plaintiffs' eleven copyrighted songs. (Dkt. No. 155.) Plaintiffs have submitted evidence that Defendants continued to infringe on songs licensed by ASCAP after the Court held Defendants had infringed on Plaintiffs' copyrights. (See Kuzyszyn Decl.) Moreover, Defendants declared about 60% of the songs broadcast on their radio stations are within the ASCAP repertory. (Stolz Decl. ¶ 3, Dkt. No. 182-1.) At oral argument, Defendants admitted to having last paid ASCAP fees in 2010, but continuing to play its licensed music. The approximately eight years of playing ASCAP compositions without paying any fees, strongly demonstrates irreparable harm. See Broadcast Music, Inc. v. CDZ, Inc., 724 F. Supp. 2d 930, 940 (C.D. Ill. 2010) (issuing permanent injunctive relief against infringing defendants who failed to obtain a BMI license after numerous advisory letters over a five-year period); Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F. Supp. 511, 516 (D.P.R. 1993) (issuing a permanent injunction against a radio station for all ASCAP's repertory where the suit "addresse[d] only the latest episode of copyright infringement involving defendants over the past 14 years."). Defendants' repeated past acts of infringement over multiple years, coupled with the substantial likelihood of current and future infringement, constitute an "actual tangible threat" of future infringement. Though Plaintiffs conclusorily assert Defendants may be unable to pay statutory damages, (Mot. at 10), the Court finds the scale of potential infringement here may indeed be beyond Defendants' ability to pay. If Defendants' radio stations broadcast 24/7 and 60% of their music is within the ASCAP repertory, the upper range of statutory damages could reach millions of dollars. Plaintiffs have established irreparable harm.

## C. Adequacy of Remedies at Law

"[T]he requisite analysis for the second factor of the four-factor test inevitably overlaps with that of the first . . . ." Grokster, 518 F. Supp. 2d at 1219 (quoting MercExchange, LLC v. eBay, Inc., 500 F. Supp. 2d 556, 582 (E.D. Va. 2007)). Inadequacy can be shown where "the infringing party will be unable to pay statutory damages or where a legal remedy would require a multiplicity of suits." Brighton Collectibles, 2013 WL 5719071, at *5 (quoting Grokster, 518 F. Supp. 2d at 1219-20)).

Defendants argue their application for an ASCAP license and Plaintiffs' ability to litigate all past harm demonstrates adequate remedies at law. (Opp'n at 8.) However, as discussed above, the Court finds the Consent Decree does not currently grant Defendants the right to play all ASCAP music, and Plaintiffs have established a tangible threat of future harm. As noted, there is a possibility Defendants may be unable to pay for their infringing activity. And, due to the nature of Defendants' infringement, Plaintiffs would be forced to bring a "multiplicity" of suits to

remedy Defendants' infringement. Thus, this factor weighs in favor of granting a permanent injunction.

### D. Balance of Hardships

Under the third factor, the Court considers the hardships facing each party by the grant or denial of a permanent injunction. Plaintiffs assert their injunction is to prevent Defendants from unlawfully playing ASCAP members' music, therefore a denial of the injunction would permit Defendants to continue exploiting these copyrighted compositions. (Mot. at 10; Reply at 9.) Defendants counter that being unable to play music licensed by ASCAP would "destroy" three of Defendants' radio stations and "would likely put Defendants out of business." (Opp'n at 9; Stolz Decl. ¶ 4.) Defendants also assert they are able to play the ASCAP repertory under the Consent Decree. (Opp'n at 9.)

Defendants have failed to show any legitimate hardship that would result from an injunction barring infringement on ASCAP members' copyrights. That Defendants' business may suffer because their radio stations cannot continue infringing on songs in ASCAP's repertory is not a valid concern. See Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 829 (9th Cir. 1997) ("[A] defendant who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities."). Indeed, the injunction sought would not be a blanket ban on Defendants playing ASCAP music. Rather, Defendants would be enjoined from playing ASCAP music without the proper authorization. Therefore, Defendants' ability to play music in the ASCAP repertory would not be extinguished, provided Defendants procured an ASCAP license or individual authorization from the copyright holders. In contrast, Plaintiffs face a credible threat of future infringement by Defendants' activities, requiring additional litigation to defend their copyrights and those of ASCAP members. This factor favors a grant of the permanent injunction.

### E. Public Interest

Lastly, the Court considers whether a permanent injunction serves the public. Grokster, 518 F. Supp. 2d at 1222. "Courts usually find that 'the public interest is . . . served when the rights of copyright holders are protected against acts likely constituting infringement.'" Getty Images (U.S.), Inc. v. Virtual Clinics, 2014 WL 1116775, at *7 (W.D. Wa. Mar. 20, 2014) (quoting Perfect 10 v. Amazon.com, Inc., 487 F.3d 701 (9th Cir. 2001).

Defendants assert the public interest is not served by an injunction because it would diminish the force of the Consent Decree and cause unnecessary confusion and delay. (Opp'n at 9.) The Court disagrees. The Consent Decree regulates ASCAP licensing and the process of fee determinations, but the injunction sought would not tread on its policies. An injunction preventing Defendants from infringing on ASCAP members' music would be completely consistent with the Consent Decree's purpose of permitting music users access to the ASCAP repertory when they follow the outlined procedures. On the other hand, the public would not

benefit from protecting Defendants' infringing activity, particularly where Defendants have no legal basis for their continued infringement. The public interest favors granting a permanent injunction.

Overall, the four factors support entering a permanent injunction against Defendants. By Defendants' own admission, they have not paid licensing fees to ASCAP since 2010, yet they have continued to play music in the ASCAP repertory. Despite Defendants' repeated contention that this is a "fee dispute" issue, the jury found Defendants had willfully infringed on Plaintiffs' copyrights, implicitly rejecting that argument. Defendants' claim that ASCAP should have pursued a fee determination from SDNY obfuscates the issue. It is incumbent upon Defendants, as the music users, to obtain an ASCAP license. Their failure to do so is presumably for strategic reasons to continue playing ASCAP compositions without paying the requisite fees. Plaintiffs have established irreparable injury, and shown the remedies of law are inadequate, the balance of hardships tips in their favor, and the public interest is served by an injunction.

### F. Scope of the Injunction

Plaintiffs' proposed injunction seeks to restrain Defendants from unauthorized public performances of any copyrighted musical composition in the ASCAP repertory. (Mot. at 12.) Defendants argue any injunction should be limited to the eleven songs at issue in the present case or all songs owned by the Plaintiffs. (Opp'n at 10.)

Numerous courts, albeit often default judgment motions, have enjoined infringing defendants from playing any works in the ASCAP repertory. See, e.g., EMI April Music Inc. v. Rodriguez, 691 F. Supp. 2d 632, 635 (M.D.N.C. 2010) (granting a permanent injunction preventing the defendants from performing any copyrighted work in the ASCAP repertory); Essex Music, Inc v. Sonora Claremont, Inc., 2009 WL 10671986, at *3 (C.D. Cal. Jan. 27, 2009) (same); Controversy Music v. Shiferaw, 2003 WL 22048519, at *2 (N.D. Cal. July 7, 2003) (same); Jobete Music Co., Inc. v. Hampton, 864 F. Supp. 7, 9 (S.D. Miss. 1994) (same). In many of these cases, the courts have enjoined the performance of all ASCAP songs, even those not owned by the plaintiffs, because the plaintiffs "represent all ASCAP members." See Controversy Music, 2003 WL 22048519, at *1; Jobete Music, 864 F. Supp. at 9.

Defendants attempt to distinguish these types of cases by arguing they were default judgment motions and/or they did not analyze the Consent Decree. (Opp'n at 11-13.) The Court will not spend any more time on Defendants' Consent Decree argument as the Court has already addressed it. In addition, the Court finds increased support for granting a broad injunction from the fact that the present posture is not one of default judgment. Here, unlike in a default judgment motion, Defendants have litigated this case through trial and beyond. At the conclusion of trial, the jury found Defendants liable for willful infringement. Moreover, Defendants themselves declared that 60% of the songs their radio stations perform are licensed through ASCAP. (Stolz Decl. ¶ 3, Dkt. No. 182-1.) This Court has ample evidence provided by all parties, likely far more than that before courts analyzing default judgment motions, to weigh the factors pertaining to the grant of a permanent injunction. Plaintiffs have established past and

likely future infringement of not just their own copyrights, but that of other ASCAP members' copyrighted works, which is more than the showing of plaintiffs in <u>Essex Music</u>, <u>Controversy Music</u>, or <u>Jobete Music</u> who still obtained expansive injunctions. This supplementary evidence provides the Court with additional rationale for permitting Plaintiffs to "represent all ASCAP members" in seeking a comprehensive injunction. Accordingly, the Court GRANTS Plaintiffs' Motion for a permanent injunction.

### G. Stay of the Injunction

Lastly, Defendants request the Court stay a permanent injunction pending the determination of its license fee. (Opp'n at 13.) The Court finds no reason to stay the issuance or enforcement of the injunction. While Defendants await a response from ASCAP about their license fee, they should not be permitted to infringe on ASCAP members' music, unless and until they are authorized by the Southern District of New York to perform these works under the Consent Decree's provisions or they obtain authorization in another manner.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiff's Motion for a permanent injunction and ENJOINS Defendants from engaging in further infringing conduct:

The Court permanently enjoins Defendants and their respective agents, servants, employees, attorneys, and those persons or entities in active participation and concert with them, from publicly performing, or causing or permitting to be publicly performed, any copyrighted musical composition owned by Plaintiffs or any copyrighted musical composition in the repertory of Plaintiffs' performing rights licensing organization, the American Society of Composers, Authors and Publishers ("ASCAP") via radio broadcast on any radio station owned, operated, managed, and/or controlled by the Defendants, or via any other means of transmission to the public, without first obtaining proper authorization to do so, either directly from the copyright owners or by license from ASCAP, as their duly authorized nonexclusive licensing representative.

**IT IS SO ORDERED.**