*EXHIBIT A*

**TECH & TELECOM**

**Admin Orders**   ☆ Favorite

**Federal Communications Commission, Decision, Applications of Arecibo Radio Corporation (Assignor); Hato Abajo Development Corp. (Assignee); For Consent to the Involuntary Assignment of Licenses for Stations WNIK(AM) and WNIK-FM, Arecibo, Puerto Rico, FCC 85-462, 101 FCC 2d 545**

Federal Communications Commission

Applications of Arecibo Radio Corporation (Assignor); Hato Abajo Development Corp. (Assignee); For Consent to the Involuntary Assignment of Licenses for Stations WNIK(AM) and WNIK-FM, Arecibo, Puerto Rico

FCC 85-462

August 13, 1985

Applications of Arecibo Radio Corporation (Assignor); Hato Abajo Development Corp. (Assignee); For Consent to the Involuntary Assignment of Licenses for Stations WNIK(AM) and WNIK-FM, Arecibo, Puerto Rico

(August 13, 1985)

FCC 85-462
File Nos. BAL-840403HS BALH-840403HT
Released: August 13, 1985

Adopted: August 9, 1985

**MEMORANDUM OPINION AND ORDER**
**By the Commission**

1. The Commission has before it (i) the captioned applications for Commission consent to the involuntary assignment of the licenses for WNIK(AM) and WNIK-FM, Arecibo, Puerto Rico, from Arecibo Radio Corporation ("Arecibo") to Hato Abajo Development Corp. ("Hato"); (ii) Arecibo's petition to return those applications; (iii) an informal objection to those applications filed by an individual named Gustavo Albizu ("Albizu"); and (iv) various related pleadings. Arecibo and Albizu contend that the applications are defective because they were filed with neither the consent nor the signature of the licensee. Hato disputes Arecibo's and Albizu's contention. [1]

2. The assignor's portions of the subject applications are signed by the Marshall of the Superior Court of Puerto Rico, Arecibo Division, rather than by an officer of Arecibo. The chain of events leading to the Marshall's signing the applications began on April 29, 1980, when the Commission granted applications (BTC-800124FZ and BTCH-800124GA) for consent to the voluntary transfer of control of Arecibo from Manuel Cabrera, Jose Cabrera, and Hector Reichard, Jr. to the A.E.C. Holding Company ("A.E.C."), a company owned by Pablo Llerandi Alum and Carmen Phipps de Llerandi (collectively "the Llerandis"). The transfers were consummated on June 10, 1980. As consideration for the transfers, A.E.C. agreed to make a series of payments to the sellers. After a dispute arose regarding A.E.C.'s compliance with its payment obligations, Arecibo's former owners sued Arecibo, A.E.C, and the Llerandis in the Superior Court of Puerto Rico; [2] and on October 21, 1983, the court entered a default judgement in the plaintiffs' favor. Arecibo's subsequent motion to set

aside the judgement was denied on May 9, 1984. A second civil action, [3] an eviction proceeding brought in the Superior Court by Arecibo's landlord for nonpayment of rent, also resulted in the entry of a default judgement against Arecibo. On May 19, 1984, the court denied Arecibo's motion to set aside that default judgement.

3. WNIK(AM) and WNIK-FM are presently dark. While there appears to be some disagreement between Hato and Arecibo as to why the stations remain dark, Arecibo presently has no access to the stations' studios and transmitter site. In addition, the October 21, 1983, decree in the contract case awarded the Cabrera group approximately $450,000 in damages and directed that Arecibo's assets be sold at a public auction. After the Cabrera group purchased those assets at the auction, the court found "[t]hat the value of [WNIK(AM) and WNIK-FM]" without the licenses to operate them "is incomplete." [4] Therefore, the court in the exercise of its equity power directed the Llerandis

to appear at the office of [the] Court's Marshall, at 10:00 a.m. of [sic] the 29th day of March, 1984, so that they will subscribe the documents necessary so that the Honorable Federal Communications Commission [may] consider a petition to transfer the licenses of the radio stations WNIK (AM) and WNIK (FM) to plaintiffs in order to make the judgement of this court and the remedy issued, effective. [5]

While the court recognized that broadcast station licensing is "the exclusive province of the Commission," [6] the March 19 Order declared that if the Llerandis failed to appear at the Marshall's office at the designated time, the Marshall would subscribe the documents "with the same effect as if [the Llerandis] had done it by themselves." [7]

4. To support its request for the dismissal of the WNIK(AM) and WNIK-FM assignment applications, Arecibo argues that only its shareholders, acting through a duly authorized corporate officer, are competent to execute binding assignment applications. Arecibo points out, in effect, that the power to execute binding assignment applications is one aspect of control of a licensee and that the Commission has never authorized the transfer of control over or the assignment of the licenses for WNIK(AM) and WNIK-FM to the Marshall. Therefore, Arecibo reasons, the Marshall's signatures on the assignment applications are nullities. In addition, Arecibo claims that Radio Station WOW v. Johnson, 326 U.S. 120 (1945), and Kirk Merkley, Receiver, 94 FCC 2d 829 (1983) [hereinafter cited as Merkley I], recons. denied, 56 RR 2d 413 (1984) [hereinafter cited as Merkley II], appeal filed, No. 84-1344 (D.C. Cir., July 25, 1984), establish that the Commission has exclusive authority over licensing matters and require the dismissal of the subject assignment applications. Arecibo reads Merkley II as holding that a license may pass from an incumbent licensee to another permanent licenses without the incumbent licensee's consent only when the incumbent licensee is legally disabled from holding a broadcast license. Arecibo contends that it has no legal disability and that the WNIK(AM) and WNIK-FM assignment applications are, therefore, procedurally defective.

5. For the most part, Alibizu's arguments echo those made by Arecibo. However, Alibizu also points out that the Superior Court lacks jurisdiction to make the public interest determinations the Commission makes in assignment proceedings and asks that the Commission authorize Arecibo to remain dark until it is able to resume broadcast operations. In the event Arecibo cannot resume broadcast operations, Alibizu requests that the WNIK(AM) and WNIK-FM channels be made available to new applicants.

6. Hato maintains that the Marshall's signatures are not nullities because the Marshall signed those applications in a representative capacity after being authorized to do so by a court of competent jurisdiction. Hato characterizes the court order directing the Marshall to sign the applications as a purely ministerial act to prevent the Llenandis from frustrating a remedy found necessary under the circumstances. Hato states that in Peace Broadcasting Corp., 36 FCC 2d 675, 676 (1982), the Commission indicated that an application which had been rejected for want of the proposed transferor's signature could be "refile[d] . . . at such time [a state] court enters an order directing [the proposed transferor] to cooperate in the application. . . ." According to Hato, the court order in this case is the type of order contemplated in Peace; and, therefore, Hato contends, the subject assignment application should be accepted for filing.

7. This case requires the reconciliation of the Commission's jurisdiction over licensing matters with a local court's jurisdiction over contractual disputes. In attempting to resolve this matter, we are guided by the Supreme Court's decision in Radio Station WOW v. Johnson, supra. In that case, the Court ruled that the Supreme Court of Nebraska had

exceeded its jurisdiction in ordering a licensee which had obtained its license through fraud "to do all things necessary" to secure the assignment of the license back to the predecessor licensee. Id. at 130. However, the Court also observed that "if the States's . . . [laws] can be effectively--respected while at the same time reasonable opportunity is afforded for the protection of that public interest which [leads] to the granting of a license, the principal of fair accommodation between State and federal authority . . . should be observed." Id. at 132.

8. The Commission's attempts to reach a fair accommodation between its exclusive authority over licensing matters and the authority of state and local courts have resulted in procedures which acknowledge that breach of contract questions are matters for the courts to decide under state and local law. See Merkley I, supra at 838; Hoyt C. Murphy, 5 FCC 2d 882, 884 (1966). Because the Commission does not possess the resources, expertise, or jurisdiction to adjudicate such questions fully, we normally defer to judicial determinations regarding the interpretation and enforcement of contracts for the sale of broadcast stations. See Merkley I, supra at 838. By this approach, we have preserved the Commission's exclusive authority to make public interest determinations on licensing matters while recognizing the role of state and local courts in adjudicating private contractual disputes. See id. at 837-38.

9. The application of the above principles to this case makes it clear that the Marshall's signatures are sufficient to make the WNIK(AM) and WNIK-FM assignment applications acceptable for filing. The Superior Court clearly had jurisdiction to adjudicate the contractual dispute between the Cabrera group and the Llerandis. In the exercise of that jurisdiction, the court determined that Arecibo's assets should be sold at a public auction and that the Commission should have an opportunity to consider whether Arecibo's licenses should be assigned to the purchaser of those assets, Hato. The mechanism the court chose to give the Commission that opportunity--ordering the Llerandis to sign the assignment applications--was a permissible one which, absent the Llerandis' defiance of the court order, would have resulted in the filing of applications meeting all Commission requirements. See Penrose Industries Corp., 15 RR 2d 1075 (1969); cf. Radio Station WOW v. Johnson, supra at 132; Ninety-two Point Seven Broadcasting, Inc., 55 RR 2d 607, 610-11 (1984) (civil court can require litigants to submit settlement agreement to Commission). The Llerandis, however, refused to sign the applications; and the Marshall signed them at the direction of the court.

10. We do not read the Supreme Court's decision in Radio Station WOW v. Johnson, supra, to say that a civil court could never take the kind of action the Superior Court took in the case in order to bring a matter before the Commission. We understand the Supreme Court to have held that, in taking steps to place a matter before the Commission, a court can neither prohibit interested parties from making arguments to the Commission concerning the merits of the matter nor infringe in any way the Commission's exclusive, jurisdiction over licensing matters. See Radio Station WOW v. Johnson, supra at 130-31. The Superior Court's actions here have not interfered with Arecibo's right to assert before the Commission any argument regarding the assignment applications, and the court specifically left to the Commission the determination of all public interest issues which might be raised by the applications. [8] In these circumstances, it is clear that the court did not infringe federal licensing responsibilities in any way. [9] Accordingly, we will waive Section 73.3513 of the Rules [10] to the extent it requires that a duly authorized corporate officer sign assignment applications, and we will affirm the prior acceptance of the subject assignment applications for filing. See Mid-Ohio Communications, Inc., 90 FCC 2d 114 (1982); Continental Telephone Corp., 41 FCC 2d 957, 959 (1973). [11]

11. The question remains whether we should grant those applications. Our responsibility to reach a fair accommodation between federal and nonfederal interests compels us to take into account those aspects of the Superior Court's decrees which do not usurp the Commission's exclusive authority over licensing matters. See generally Radio Station WOW v. Johnson, supra at 132. In the exercise of its jurisdiction, the court determined that the Llerandis had breached their contract with the Cabrera group and that the Cabrera group could be made whole only by the assignment of WNIK(AM)'s and WNIK-FM's licenses to Hato. See March 19 Order, supra at 1. The Commission has "recognize[d] that [a station's] operating authorization must usually accompany [its] physical assets." Merkley I, supra at 837. There is no reason to depart from that principle in this case. [12] Hato has possession of WNIK(AM)'s and WNIK-FM's physical assets as a consequence of the Superior Court's exercise of its jurisdiction. Accordingly, Hato is in a position to resume operations and

provide service to the public if the licenses are assigned to it. After review of the assignment applications, we have found Hato fully qualified to become a Commission licensee and that the grant of the assignment applications would serve the public interest, convenience, and necessity. Therefore, we will grant those applications. Our grants will be subject to and without prejudice to whatever action, if any, the Commission may deem appropriate in the event the order of the Superior Court of Puerto is reversed or otherwise modified on rehearing or appeal. [13]

12. Accordingly, IT IS ORDERED, that the applications for Commission consent to the assignment for WNIK(AM) and WNIK-FM from Arecibo Radio Corporation to Hato Abajo Development Corporation ARE HEREBY GRANTED; and that the petition to return those applications filed May 14, 1984 by Arecibo Radio Corporation and the informal objection to those applications filed June 15, 1984 by Gustavo Albizu, ARE HEREBY DENIED.

FEDERAL COMMUNICATIONS COMMISSION

William J. Tricarico

Secretary

### End Notes

[1]. Because Arecibo has disavowed any claim to have its petition treated as a petition to deny, Arecibo Reply at 2-3, we will treat its pleadings as an informal objection pursuant to Section 73.3587 of the Commission's Rules, **47 C.F.R. Sec. 73.3587** . In view of this treatment, we need not reach Hato's arguments regarding the timeliness of Arecibo's initial pleading, the sufficiency of that pleading as a petition to deny, and Arecibo's alleged lack of standing to file a petition to deny.

[2]. Figueroa v. Alum, Civil No. 82-3080A (filed June 23, 1982). Manuel Cabrera died on November 2, 1982; and the members of his estate, Elina Figueroa, Enid Cabrera, Maelmar Cabrera, and Mayra Cabrera, were substituted as plaintiffs in the civil action. These substitute plaintiffs, Jose Cabrera, and Hector Reichard, Jr., collectively, own 100% of Hato. This Opinion will refer to those stockowners as "the Cabrera group."

[3]. Jose Antonio Cabrera Quijano v. Arecibo Radio Corp., Civil No. 83-3033A.

[4]. Order in Figueroa v. Alum, supra at 1 (Superior Ct. P.R., Mar. 19, 1984) [hereinafter cited as March 19 Order].

[5]. Id. at 1-2.

[6]. Id. at 1.

[7]. Id. at 2.

[8]. See March 19 Order, supra at 1-2.

[9]. The Court's actions are also consistent with Section 310(d) of the Communications Act, as amended, **47 U.S.C. Sec. 310(d)** . That section does not give Commission licensees the right to keep courts from placing before the Commission questions which the courts, in the exercise of their jurisdictions, have determined that the Commission should decide. See Ninety-two Point Seven Broadcasting, Inc., supra at 610-11. In addition, the act of placing before the Commission the question whether certain licenses should be assigned does not effectuate a transfer, assignment, or disposal of those licenses or of any right under those licenses. Id. at 611.

[10]. **47 C.F.R. Sec. 73.3513** .

[11]. Radio KDAN, Inc., **11 FCC 2d 934** , recons. denied, **13 RR 2d 100** , aff'd on other grounds sub nom., Hansen v. FCC, **413 F. 2d 374** (D.C. Cir. 1969), does not mandate a different result. In that case, the former licensee and putative assignee had signed the assignor's portion of the application pursuant to a mortgage provision which had automatically and irrevocably appointed him the licensee's attorney in fact for purpose of seeking reassignment of the license when the licensee defaulted on the mortgage. The Commission deemed that mortgage provision void ab initio because it was more than a

device to keep the licensee from "'caus[ing] the assignment application to be defective by refusing to sign the assignor's portion.'" 13 RR 2d at 102, quoting Hansen Application for Reconsideration. Indeed, the Commission indicated that mortgage provision in question would have kept the licensee from asserting arguments before the Commission. Id. at 103. This case involves no reversionary provision or limitation on a party's ability to assert arguments before the Commission; and the Superior Court's order directing the Marshall to sign the assignment applications cannot, in any way, be viewed as automatically and irrevocably appointing Hato as Arecibo's attorney in fact for purposes of the WNIK(AM) and WNIK-FM assignment applications.

12. In Merkley, the Commission had before it competing claims to a license from the incumbent licensee and the court-appointed representative of a creditor of a former licensee. The incumbent licensee was operating with equipment and property which had been acquired in a transaction separate from the one which led to the court proceeding. By court order, the equipment and property being used by the station could not be attached by the court-appointed representative. In those unusual circumstances the Commission determined that it was inappropriate to apply the general policy of having the operating authorization accompany the physical assets, because the incumbent licensee could continue to provide service to the public with its own equipment and property. See Merkley I, supra at 837. See also Merkley II, supra at 414, 416-17. In this case, it is appropriate to apply that policy in order to provide for the resumption of service to the public. To the extent Merkley II suggests that the licensee must be adjudged legally disabled before the Commission will assign a license involuntarily, see 56 RR 2d at 417, it does not accurately characterize our policy in this area. Our policy is to accommodate state and local court decrees adjudicating disputes over contract and property rights, unless a public interest determination under the Communications Act, such as the determination in Merkely, compels a different result.

13. While Arecibo has indicated that it will appeal the Superior Court's order, there has been no judicial stay of that court's mandate. Absent such a stay, we decline to defer action on the assignment applications. We note that under Puerto Rican law, there appears to be no limitation of the time within which Arecibo must appeal the court order.