*EXHIBIT B*

**TECH & TELECOM**

## Admin Orders   ☆ Favorite

Federal Communications Commission, Decision, Ninety-Two Point Seven B/casting, 55 R.R.2d 607

Federal Communications Commission

**Ninety-Two Point Seven** B/casting

February 10, 1984

Show Headnotes ⌄

NINETY-TWO POINT SEVEN B/CASTING, INC. Mechanicsville, Virginia, HANOVER RADIO, INC. Mechanicsville, Virginia

Released: February 10, 1984;
MEMORANDUM OPINION AND ORDER
By the Commission: (Chairman Fowler not participating.)

1. Before the Commission is an Application for Review filed on November 28, 1983, by **Ninety-Two Point Seven** Broadcasting, Inc. (92.7) pursuant to Sec. 1.102(b)(3) of the Commission's rules. See **47 CFR Sec. 1.102(b)(3)** . [1] **Ninety-Two Point Seven**'s Application for Review seeks review of a letter dated November 10, 1983, issued by Daniel M. Armstrong, Associate General Counsel, [2] which addressed the issue of whether the Virginia court system has the authority to determine the validity of contracts between entities subject to our licensing authority under Title III of the Communications Act. The General Counsel's Office concluded that such authority exists. Hanover Radio, Inc. (Hanover) has filed an opposition to the Application for Review. For the reasons set forth below, we conclude that the General Counsel's interpretation of the law and our policy was correct and should be affirmed.

### Background

2. Hanover and 92.7 are currently mutually exclusive applicants before this Commission. [3] They are both seeking to obtain an FM broadcasting license to serve Mechanicsville, Virginia. On February 2, 1982, Hanover and 92.7 entered into a settlement agreement. Pursuant to that agreement, Hanover was to reimburse 92.7 for its expenses in preparing and prosecuting its application; in return, 92.7 was to request dismissal of its application. After the executed settlement agreement was submitted to the presiding Administrative Law Judge, Joseph Chachkin, but before he approved it, [4] 92.7 sought to withdraw from the settlement agreement contract and continue prosecuting its application. Judge Chachkin granted 92.7 motion to withdraw because he, and apparently the Broadcast Bureau, believed he was without the authority to enforce the settlement agreement. [5] The Judge also refused to stay the proceeding while Hanover sought enforcement of its contract in court. Hanover proceeded to seek enforcement of the settlement agreement in the Virginia Circuit Court of the City of Richmond. On September 14, 1982, the Circuit Court concluded that the agreement between 92.7 and Hanover constituted an enforceable contract and awarded Hanover specific performance. On September 17, 1982, [6] the Review Board vacated the Judge's refusal to stay the proceedings. [7] On October 11, 1983, the

Virginia Supreme Court consented to hear 92.7's appeal on the sole issue of "whether the Circuit Court lacked subject matter jurisdiction and is preempted from entering a decree which effectively overrules a final decision of the Federal Communications Commission, and directly impinges upon the Commission's exclusive licensing authority." Hanover has filed a "Motion to Dismiss Appeal Improvidently Granted."

3. By letter dated October 26, 1983, 92.7 informed the General Counsel's Office of the Virginia Supreme Court proceeding and indicating we might wish to intervene in that proceeding in order to preserve our jurisdiction over the subject matter. By letter dated November 3, 1983, Hanover also brought this proceeding to the General Counsel's attention and requested that he either submit comments on Hanover's Motion or, in the event the motion is denied, seek the Supreme Court's consent to file a brief amicus curiae in the proceeding. On November 10, 1983, the General Counsel's Office, responded with the subject letter from Daniel M. Armstrong. [8] Although the General Counsel's Office declined to become directly involved in the proceeding, it did briefly address the legal question presented to the court. It concluded that the Circuit Court had the subject matter jurisdiction to review the contract dispute and to fashion the appropriate remedy. By letter dated December 2, 1983, the General Counsel affirmed Mr. Armstrong's interpretation of the law. [9]

Issues

4. In the Application for Review, 92.7 requests that the Commission reverse the interpretation of law and the statement of Commission policy as contained in the letter dated November 10, 1983 from the Office of the General Counsel to Hanover's attorney and direct the General Counsel to file a brief amicus curiae in the pending court proceeding. **Ninety-Two Point Seven** advances three arguments in support of its request. First, 92.7 contends that Eugene F. Mullin, Counsel for Hanover, and the staff of the General Counsel's Office engaged in ex parte contacts. **Ninety-Two Point Seven** bases its contention upon the fact that the letter dated November 10, 1983 was solicited solely by Hanover, [10] that the staff responded within **seven** days to Hanover's request for intervention, and that the subject letter was hand-delivered to the Virginia Supreme Court the day after its release, even though the Court was closed that day in observance of Veteran's Day. Second, 92.7 asserts that Hanover has improperly represented to the Virginia Supreme Court that the subject letter represented the opinion of the General Counsel. **Ninety-Two Point Seven** notes that the letter was not signed by the General Counsel. [11] Third, 92.7 maintains that the General Counsel's consideration of the jurisdiction question was inadequate. **Ninety-Two Point Seven** asserts that the General Counsel's letter treated the issue in a cavalier manner and lacked in-depth analysis. Contrary to the General Counsel's position, 92.7 contends that the question is not who has the authority to determine the validity of contracts between entities subject to th Commission's licensing authority, [12] but rather the issue is whether the courts can encroach upon the Commission's Title III licensing authority by forcing two competing applicants to settle even though the Commission has never approved their settlement. **Ninety-Two Point Seven** considers the Commission's approval of the settlement contract tantamount to consummation of the contract. Further, 92.7 asserts that permitting the courts to enforce unconsummated settlement agreements is contrary to the public interest because one settling party will be involuntarily before the Commission.

5. In response, Hanover asserts that 92.7's ex parte argument is based upon speculation and conjecture. Hanover notes that because 92.7 was served with a copy of Hanover's letter dated November 3, 1983, the letter was properly filed in accordance with the Commission's ex parte rules. [13] Furthermore, the status inquiries directed to the staff were permissible under the Commission's ex parte rules. See *47 CFR Sec. 1.1227(e)*. Second, Hanover, asserts that it was not a misrepresentation to identify the subject letter as originating from the Office of General Counsel. Although the General Counsel did not sign the letter, Hanover notes that it was executed on behalf of the Associate General Counsel. Finally, with regard to the merits of the legal question presented, Hanover maintains that, procedurally, 92.7's application for review is a belated effort to reverse the Review Board's 1982 order which concluded that the problem of contract enforcement should be resolved in the courts. Moreover, Hanover notes that 92.7 has not cited any authority to support its interpretation of the law. With respect to the public interest, Hanover contends that it would be ill-served for the Commission to ignore valid contracts and encourage the courts to do likewise.

## Discussion

6. We find that 92.7's arguments concerning potential violations of the Commission's ex parte rules are unfounded and based upon mere speculation. Initially, we agree with the conclusion of the Office of the General Counsel in its December 1983 letter that it is doubtful that the ex parte rules even apply in this situation. Nevertheless, assuming the ex parte rules do apply, there have been no violations. First, as long as Hanover served 92.7 with a copy of its letter requesting our intervention in the Virginia Supreme Court proceeding, then under the definition of an "ex parte presentation," *47 CFR Sec. 1.1201(g)*, there has been no prohibited ex parte presentation. See Commission rules Sec. 1.1227(e), *47 CFR Sec. 1.1227(e)*. **Ninety-Two Point Seven**'s remaining assertions of ex parte contacts are equally speculative and without merit. [14] Accordingly, we reject 92.7's ex parte allegations.

7. Furthermore, with respect to 92.7's misrepresentation allegations, there was no misrepresentation in Hanover informing the Virginia Supreme Court that the subject letter represented the opinion of the Office of the General Counsel. In that letter, the General Counsel affirmed Mr. Armstrong's interpretation of the law and relevant Commission policy. Furthermore, in such instances where there is no novel issue of law or policy, the Office of General Counsel may issue advisory opinions for the Commission.

8. Finally, 92.7 has failed to present us with any legal or policy arguments which would warrant our reversing the General Counsel's conclusions in the November 10, 1983, letter. **Ninety-Two Point Seven** argues that the courts cannot enforce settlement agreeemnt contracts prior to Commission approval because the contracts are not consummated until that time, and further, such actions encroach upon the Commission's authority to determine whether the settlement is in the public interest. We disagree. The question of whether a valid and binding contract exists is one of state contract law. While Section 311(c) of the Act, **47 USC Sec. 311(c)**, requires that the contract not be effectuated until the applicants have received Commission approval, the Act does not preclude applicants from entering into valid contracts that are subject to our approval. The enforcement of such contracts at any **point** after they become legally binding under state law does not impede our ability to reach a public interest determination vis-a-vis the settlement agreement. Even though the court could require the litigants to submit the agreement to the Commission, the court cannot require our approval of the agreement. Further, pursuant to Section 309(a) of the Communications Act, **47 USC Sec. 309(a)**, the Commission must also determine whether a grant of the remaining application is in the public interest.

9. In sum, the Virginia state courts have the power to decide whether Hanover is entitled to specific performance of its contract with 92.7. If the state courts answer this question in the negative, the Commission proceedings can go forward and the applicants will be considered comparatively. If specific performance is ordered, the Commission retains its power to determine whether to grant 92.7's motion to dismiss its application and approve the terms of the settlement agreement. Furthermore, even after dismissal of 92.7's application, the Commission has the authority to decide whether a grant of Hanover's application would be in the public interest. We believe that the above demarcation of respective roles of the Virginia courts and this Commission in a situation involving both the validity of a private contract under the state law and the Commission's licensing responsibility reflects a proper accommodation between state and federal authority and is consistent with the Supreme Court's decision in Radio Station WOW v. Johnson, **326 U.S. 120** (1945).

10. Additionally, to the extent the settling applicant may wish to present evidence on the question of whether the remaining application should be granted, we note that it has already had an opportunity to raise and support relevant allegations in a petition to enlarge issues. Assuming those issues were designated against the remaining applicant, they can be resolved in hearing where the Mass Media Bureau can present relevant evidence which bears on the public interest. Thus, the settling applicant's, here 92.7's, presence is not essential.

11. For these reasons and those set forth in the General Counsel's November 10, 1983, letter we concur with the General Counsel's position that the courts have the jurisdiction to interpret and enforce settlement agreement contracts.

12. Accordingly, it is ordered that the Application for Review filed by **Ninety-Two Point**

**Seven** Broadcasting, Inc. is denied.

### End Notes

[1]. **Ninety-Two Point Seven**'s reference to Sec. 1.102(b)(3) is incorrect. That rule concerns the effective dates of actions taken pursuant to delegated authority and stays thereof. The relevant provision is Sec. 1.115 of the Commission's rules. 47 CFR Sec. 1.115 .

[2]. Subsequently, 92.7 wrote another letter to the General Counsel, Bruce Fein, expressing its displeasure with Mr. Armstrong's letter and questioning the circumstances surrounding its release. The General Counsel responded to 92.7's second letter on December 2, 1983. At that time, the General Counsel affirmed Mr. Armstrong's conclusions and found that 92.7's concerns regarding the circumstances surrounding the release of the letter were unfounded.

[3]. BC Dockets Nos. 80-664 and 80-665.

[4]. The Broadcast Bureau had supported approval of the agreement.

[5]. See **Ninety-Two Point Seven**'s Petition for Appeal in the Supreme Court of Appeals of Virginia at Richmond, page 9.

[6]. Hanover Radio, Inc., 91 FCC 2d 849 [ 52 RR 2d 403 ] (1982).

[7]. The Review Board, while considering and balacing the factors set forth in Virginia Petroleum Jobbers Ass'n v. FPC, 259 F2d 921 , 925 (DC Cir. 1958), noted that ". . . the Commission has previously indicated its view that it will defer to state contract law even where the effect of the lex loci is to preclude the prosecution of a competing broadcast application by a local entity. Paul Santiago Roman, 4 RR 2d 175 ., recon. denied, *38 FCC 2d 619* , 4 RR 2d 777 (Rev. Bd. 1965)." 91 FCC 2d at 851.

[8]. The letter was actually signed by John E. Ingle, Deputy Associate General Counsel, on behalf of Mr. Armstrong, Associate General Counsel.

[9]. The General Counsel also concluded that, contrary to 92.7's contentions in its letter dated November 10, 1983, his staff had not violated the ex parte rules and had the authority to provide Hanover with an interpretation of the law and the Commission's policy.

[10]. We note that 92.7 was served with a copy of Hanover's request for the Commission's intervention.

[11]. **Ninety-Two Point Seven** also speculates that the Virginia Supreme Court may interpret the letter as an official statement by the Commission on the Virginia litigation or as an advisory opinion.

[12]. **Ninety-Two Point Seven** asserts that neither the courts nor the Commission can enforce such contracts unless they have already been approved by the Commission.

[13]. On the other hand, 92.7's letter dated October 26, 1983, apparently was not served on Hanover.

[14]. For example, 92.7 argues that the staff's promptness is an indicia of an ex parte contact. That assertion is on its face without merit.