FRED D. HEATHER - State Bar No. 110650
fheather@glaserweil.com
RORY S. MILLER - State Bar No. 238780
rmiller@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for
Court-Appointed Receiver
W. Lawrence Patrick

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| WB MUSIC CORP. et al., | CASE NO.: 5:16-cv-00600-JGB (SPx) |
| Plaintiffs, | Hon. Jesus G. Bernal |
| v. | |
| ROYCE INTERNATIONAL BROADCASTING CORP., et al., | **RECEIVER'S REPORT RE: STOLZ PERJURY AND CONTEMPT** |
| Defendants. | |

At 12:21 a.m. this morning, counsel for Stolz emailed a declaration to counsel for the Receiver that purported to, at long last, comply with Stolz's disclosure obligations. There was an error in the file as transmitted that was only corrected this morning at 8:30 a.m., and counsel for the Receiver have not yet been able to review this declaration and fully compare its contents to the transcript of the recent hearings. Excerpts of the relevant portions of this document are attached as Exhibit 1 to this report.[1] This latest declaration does, however, disclose that Stolz remains in violation of the Court's orders, as it promises financial information that he has been ordered to deliver at some unspecified point in the future. *See, e.g.,* Exhibit 1 at pp. 3-4 (items 6 and 9 responses).

In any event, even without Stolz's most recent declaration, it is apparent that he has repeatedly violated the Court's orders and made misrepresentations under oath—sometimes outright lies, and other times lies by omission, where he dribbles the truth out in as small of morsels as possible, hoping that his resistance to providing information will prevent the Receiver from learning of his non-disclosures.

As the Court will recall from the February 26, 2021 hearing, one area where Stolz has not been fully truthful concerns payments made by Steve Zap and his affiliated companies such as Artbeatz to Stolz and others on behalf of the stations.

During the hearing, counsel for the Receiver demonstrated how Stolz's representations regarding Mr. Zap's payments were patently false. *See* 2/26 Transcript at 5:10-7:7. As counsel for the Receiver showed the Court, Stolz's claim that all payments by Mr. Zap would appear on the stations' cash logs was false. This violated not only the Court's order (dkt. no. 388) that compelled an accounting of these materials, but also were perjury to the extent that Stolz's responses were intended to be under oath as the Court required.

---

[1] Specifically, the Receiver has redacted home addresses for all individuals, account numbers, and other information of third parties, as well as removed the exhibits.

But that's not all that was false. Immediately after having this falsehood called out, Stolz's counsel stated to the Court that "[m]y understanding, Your Honor, is that there were two such payments made by Artbeatz and that one of — and these were for rent payments, and then — there's two checks." 2/26 Transcript at 7:17-19. Stolz's counsel repeated that representation shortly thereafter: "my understanding is that there is no such other payments, but I will look into that, Your Honor." 2/26 Transcript at 8:16-17.

Stolz himself took this line after being placed under oath and questioned by the Court:

> THE COURT: So you're only aware of only two payments that were made by Steve Zap and/or his companies to anybody affiliated with the station?
>
> MR. STOLZ: That is my understanding, yes.

(2/26 Transcript at 10:4-7).

Either Stolz's counsel is complicit in his misrepresentations and perjury, or Stolz has lied to his own counsel. Under questioning by the Receiver's counsel, Mr. Stolz admitted that Steve Zap has paid lease payments to both Executive Park Properties (the landlord for whom the Court was shown the check) and to Chuck Haas, the landlord for the transmitter station. 2/26 Transcript at 41:8-15.

The Receiver was unable to develop complete information on this point due to Stolz's disobedience of the Court's order. *See* 2/26 Transcript at 42:10-44:4. Of course, even Stolz's sworn answers after being caught in his omissions of the truth is at odds with information that the Receiver has independently obtained from Mr. Zap. *See* 2/26 Transcript at 38:17-39:3. The Receiver is in the process of attempting to obtain third party declarations attesting to Mr. Zap's representations and will provide those to the Court as soon as they are obtained.

Another example of Stolz's piecemeal revelation of information only when

caught in a non-disclosure concerns the employees of the radio stations. Mr. Stolz was asked, point blank:

> Q: Other than Mr. Palomares and Ms. McKay, are there any other employees or independent contractors of the radio station at this time?
>
> A: No.

2/26 Transcript at 57:7-10.

> Of course, the Receiver had caught Stolz in his lie:
> MR. PATRICK: Mr. Stolz, did you not have a part-time employee who works at KRCK in Palm Desert?
>
> A: Yes.

2/26 Transcript at 59:12-14.

When asked why he failed to disclose this employee less than two pages previously in the transcript, Mr. Stolz was dismissive: "Frankly, I didn't think about part-time people other than those whom you mentioned." 2/26 Transcript at 60:2-3. Of course, Stolz was readily able to name this individual as Al Ramirez. 2/26 Transcript at 60:18. Worse, Stolz's most recent declaration identifies *yet another* individual he failed to name: Valente Gonzalez. Exhibit 1 at p. 7. No explanation has been given by Stolz as to why Mr. Gonzalez was not previously identified in his sworn testimony.

Moreover, while the Court was correct that it was very clear that Stolz had violated, and continues to violate, its orders by managing the stations, Stolz made direct admissions of such while under oath. While being questioned about directing legal counsel for the stations on a debt collection matter, Mr. Stolz admitted:

> Q: Were you directing Mr. Jameson [an attorney representing the station] in regards to that legal action [Bellaire Towers Homeowners' Association's lien] at the

time you spoke with him within the last six months?

A: Yes.

2/26 Transcript at 49:14-17.

Apart from these direct examples of perjury and disobedience, Stolz's examination was rife with claims that he either did not know information he was ordered to disclose, or that he would have to go get information—information that the Court has repeatedly ordered him to gather and provide.  It seems that Stolz's typical gambit was to claim that he "believed" that information had been provided, even when it had not. At a minimum, this demonstrates Stolz's extremely cavalier attitude towards the Court's orders requiring him to disclose information under penalty of perjury—he took no steps to ensure that the information was in fact disclosed, that it was accurate information, and that it was complete. He merely "believed" it was. Examples abound throughout the testimony provided by Stolz.

In sum, despite Edward Stolz's best efforts at obfuscating the truth and hampering the Receiver, the truth is finally beginning to come out—truth that Stolz has done his best to avoid disclosing, including by making misrepresentations to the Court and under oath. It is also clear that despite the Court's repeated contempt orders and an overnight stay in custody after being a fugitive from justice that Stolz continues to fail to obey the Court's directions.

DATED:  March 4, 2021

GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP

By: _____
FRED D. HEATHER
RORY S. MILLER
Attorneys for
Court-Appointed Receiver

# EXHIBIT 1

# RESPONSES TO REQUESTS FOR INFORMATION

With regard to the Order of Hon. Jesus G. Bernal issued on February 24, 2021 [Dkt. 388], the following responses are provided in response to the acts required to be performed by Edward Stolz. The responses pertain to the twelve items listed in the Order.

**ITEM 1:** **Stolz must have signed over complete operational control and transactional authority to the Receiver for any and all bank accounts from which any monies have been paid, or income deposited, for any of the receivership assets.**

Response: Edward Stolz was unable to sign over operational control and transaction authority to the Receiver due to banking regulations and advice given to Edward Stolz and Debby McKay by bank personnel. Consequently, rather than delay access of those funds to the Receiver, the following bank account has now been closed:

Bank of America   Account No. ████████9995

The proceeds of the Royce International accounts, funded by Royce receipts, have been converted to a cashier's check in the amount of $1,041.01. This was forwarded by overnight delivery, to Adli Law, Los Angeles on March 2, 2021, with instructions to transmit that check to the Receiver. Adli Law is being directed to send the funds to the Receiver later this week. A Silver State bank account (Bank of America Account No. ████████6742) was closed by the Bank of America on September 21, 2020, without prior notice, and was not reopened.

There are no other bank accounts owned by the three stations of the Receivership.

**ITEM 2:** **Stolz must provide contact information (name, address, telephone number and email) for the accounting firm that prepared the receivership assets' 2016 tax returns, which Stolz has represented is the most recent year of filing.**

Response: The contact information (name, address, and telephone number) for the accounting firm that prepared the receivership assets' 2016 tax returns is as follows:

> Maxym S. Panchuk, CPA
> O'Brien & Panchuk, LLP
> 44751 Village Court, Suite 300
> Palm Desert, CA  92260
> 760-851-0056
> Email:  info@obrienpanchuk.com

**ITEM 3:** **Stolz must provide any and all documents in his possession, custody, or control that relate to the as-yet unfiled 2017, 2018, and 2019 tax returns for the receivership assets**

Response:   The documents that relate to the as-yet unfiled 2017, 2018, and 2019 tax returns for the receivership assets that have been requested are in the possession and custody of Panchuk Accountancy.

The contact information for Panchuck Accountancy is as follows:

> Panchuk Accountancy, LLP
> 44751 Village Court, Suite 300
> Palm Desert, CA  92260
> 760-851-0056
> Email:  info@obrienpanchuk.com

Debbie McKay has requested these materials from Panchuk Accountancy. Those documents will be provided upon receipt under separate cover.

**ITEM 4:** **Stolz must provide contact information (name, address, telephone number and email) for the landlord that operates the primary transmitter site for KRCK (the Palm Desert station), as well as all keys to the transmitter site and a copy of the lease or rental agreement with that landlord.**

Response:  The contact information (name, address, telephone number, and email for the landlord that operates the primary transmitter site for KRCK (the Palm Desert station) is as follows:

> KRCK
> CF&D CORP
> 6774 Magnolia Avenue
> Riverside, CA  92596
> Site Manager:  Mr. Bryant
> Email:  jtb@wireless-sites.com
> 805-428-3705

2

Edward Stolz does not possess keys other than those which have been provided. Mr. Bryant can be contacted for the access to the transmitter site.

A signed copy of the lease or rental agreement for the property is attached hereto as <u>Attachment A</u>.

      **ITEM 5:**    **Stolz must provide contact information (name, address, telephone number and email) for the landlord that operates the backup transmitter site for KRFH (the Las Vegas station), as well as all keys to the transmitter site and a copy of the lease or rental agreement with that landlord**

<u>Response</u>:   The contact information (name, address, telephone number, and email) for the landlord that operates the backup site for KFRH (the correct call letters of the Las Vegas station) is as follows:

This information is being provided for Black Mountain. This is a back-up transmitter site that was secured after the Mt. Potosi transmitter building collapsed, crushed, and debilitated KFRH antenna and transmitter facilities.

    Western Radio Service
    P.O. Box 2450
    Carefree, Arizona   85378
    541-389-5286

A diligent search for this key could not confirm the identity of the correct key matching this building.  Richard Ordoffer or Toni (the Administrative Assistant for the site) can be contacted to access this site.  They can be contacted at 541-389-5286.  A message can be left with those persons for Entry and extra keys.

After a diligent search, no signed copy of the lease could be located.  An unsigned copy of the lease with the landlord for the site is attached hereto as <u>Attachment B.</u>

      **ITEM 6:**    **Stolz must provide a complete accounting, including the date, amount, and purpose, of any and all payments from Steve Zap and/or any company affiliated with him either to the receivership stations or on the behalf of the receivership stations.**

<u>Response</u>:  Debby McKay has requested an accounting, including the date, amount, and purpose, of any and all payments from Steve Zap and/or any company affiliated with him either to the receivership stations or on the behalf of the receivership stations from Artbeatz since July 6, 2020.  Ms. McKay expects to

receive that information, shortly. That information will be provided under separate cover.

**ITEM 7:** **Stolz must provide credit card statements that show any reimbursable expenses from the receivership stations to Stolz, Debby McKay, or others.**

Response: There are no credit card statements that show any reimbursable expenses from the receivership stations to Edward Stolz, Debby McKay, or others. The defendant companies, have not issued at any time any credit cards to any staff member for any items to be reimbursed, nor does it use any type of Credit Cards or Debit Cards, nor does it have any such statements. In addition, no other person or company has used any credit cards for reimbursable expenses from the receivership stations to Edward Stolz, Debby McKay, or to anyone.

**ITEM 8:** **Stolz must provide any and all communications, in whatever hard copy or electronic form, regarding valuation of the receivership stations from January 1, 2018 to the present.**

Response: Copies of all documents, whether in hard copy of electronic form, are attached hereto as Attachment C.

**ITEM 9:** **Stolz must provide a complete accounting, including the date, amount, and purpose, of any and all payments by each of the receivership stations from January 1, 2018 to the present. For the avoidance of doubt, a generalized statement of what the stations' monthly payments are is insufficient to satisfy this request**

Response: An accounting, including the date, amount, and purpose, of all payments by each of the receivership stations from January 1, 2018 to December 31, 2018 is attached hereto as Attachment D. It is offered as accurate to the best of Debby McKay's and Edward Stolz' knowledge, information and belief and the best information available to them. A complete accounting, including the date, amount, and purpose, of any and all payments by each of the receivership stations from January 1, 2019 to present still is in the process of being compiled and will be provided under separate cover.

4

**ITEM 10:** Stolz must identify, by creditor and balance, a listing of all amounts that the receivership stations are currently in arrears, as well as an explanation for all such unpaid debts.

Response: A listing, by creditor and balance, of all amounts that the receivership stations are currently in arrears, as well as an explanation for all such unpaid debts, is as follows:

1. Crown Castle: According to a document filed with the Court [Dkt. 362] by the Receiver, the amount owed to Crown Castle is $882,667.63. It is not known by Edward Stolz whether that number is accurate. The amount that is claimed by Crown Castle that is owed is neither known nor adjudicated. Receiver alleges the Crown Castle tower lease at Mt. Potosi, is in arrears. In fact, the site became debilitated due to electrical (power) failure in October 2015, with subsequent power distribution disablement and diesel generator failure, rendering the site unusable for its intended purposes. Then, in 2017, the entire building collapsed due to structural failure and inadequate maintenance, causing the facility to become completely unusable. Lessor failed and refused to repair the damage and restore Silver State's functionality, which resulted in Silver State bringing suit and suspending the payment of rents during the period of incapacity. Crown responded with suit for rent during the period of incapacity. Silver State demonstrated only five percent of the building's functionality dictated a reasonable rental value of less than $20,000.00 until expiration of the lease. Silver State tendered a settlement amount of $100,000.00 without waiving its greater claims against Crown. It happened that Crown had and received the funds but failed and continues to fail to respect the settlement and continues to fail to dismiss its own action. Silver State's counsel to these actions will confirm these facts, and is continuing actions against Crown.

A functional site would have generated $364,800.00 in rents for the relevant period. The minimally-functional site, from which KFRH did not in fact operate, had a value of $18,240.00, which is far less than the $100,000.00 already tendered in full settlement and in reliance upon Crown dismissing its cross-action for unpaid rents. The number of $800,000.00 has never been memorialized, and was only heard third-hand through ADLI Law.

2. Bellaire HOA: It has been claimed that the amount of $305,000 is owed to Bellaire HOA. The matter of the Bellaire HOA irregularly-obtained judgment has been raised by the opposition. This case arose from Golden State's suit seeking return of its $120,000 security deposit, which Golden State advanced on behalf of the seller of KREV, at closing. It has since vacated the building in an

orderly and timely manner upon conclusion of its lease. Bellaire cross complained for alleged unauthorized use of an amount of electrical power in the approximate value under $5000. This small amount of power was, in fact, used by Bellaire's own window-washing trolley equipment; not by Golden State. Had Golden actually used this power, its modest value would have been deducted from the greater security deposit, with the balance to be returned to Golden State. The security deposit remains unpaid to date. Moreover, Golden State is now mounting an action for trespass and interference to chattels, conversion, and interference with prospective business advantage, vs. Bellaire HOA. This matter arises from its interference with Golden State's reclamation of its property (rooftop antenna tower), and its exercising dominion over and using the Golden State tower assets, as if it were its own income property.

Bellaire has frozen Golden State's $120,000 security deposit, and has stated that it wants an additional $200,000.00. Golden State, on the other hand, asserts damages including the deposit, $500,000.00 for the value of the defalcated property, plus dislodgment of the unjust gain received by Bellaire, believed to be in excess of $100,000.

3. <u>Hass Properties</u>: It has been claimed that there is an outstanding obligation to Haas properties in connection with the current KREV tower lease. The amount of any allegation is not known at this time. There is no such obligation known by or expressed to Edward Stolz, Golden State, or its principals. There is also no action threatened or pending.

With the proviso that Edward Stolz has not been in control of the stations since July 24, 2020, Edward Stolz is not aware of any other amounts that the receiver stations are in arrears at this time.

**ITEM 11:** **To the extent not covered elsewhere in this or the Court's prior orders, Stolz must surrender all keys to any of the stations' studios, offices, primary transmitter sites, secondary/backup transmitter sites, or equipment cabinets that remain in his possession custody or control, including, specifically, all keys to the KREV (San Francisco) studio and office.**

<u>Response</u>:   Edward Stolz has surrendered all keys in Edward Stolz's or any of his subsidiary company's possession to any of the stations' studios, offices, primary transmitter sites, secondary/backup transmitter sites, or equipment cabinets, including, specifically, all keys to the KREV (San Francisco) studio and office. Should there be any exception, it is not due to the actions or inactions of defendants; rather, this would be due to the inability to identify the appropriate

key. In the meantime, Ms. McKay has provided a method for the Receiver by which to quickly reach the respective site managers; KRCK transmitter site, Indio Hills, Mr. Bryant 805-428-3705 (page 2 item 4) and Richard Ordoffer or Toni 541-389-5286 (page 3 item # 5).

**ITEM 12:** **Stolz must provide a valid current mailing and residence address for himself, Debby McKay, and any other employees or contractors of the receivership stations.**

Response:

Edward Stolz:

A current valid mailing address for Edward Stolz is: Edward Stolz, ███████████████████████

A current valid residence address for Edward Stolz is Edward Stolz, 1███████████████████████

Debby McKay:

A current valid mailing address for Debby McKay is: Debby McKay, Security Pacific Real Estate, 11707 Fair Oaks Blvd., Suite 300, Fair Oaks, CA  95628

A current valid residence address for Debby McKay is: Debby McKay, ███████████████████████

Other Persons:

A current residence address of James Palomares is: ███████████████████████

A current residence address of Valente Gonzalez is: ███████████████████████

A current residence address of Albert Ramirez is: ███████████████████████

## CERTIFICATION

I declare, under penalty of perjury, according to the law of the State of California that the forgoing is true and correct to the best of my knowledge and recollection.

_____
Edward Stolz