SHARON D. MAYO (SBN 150469)
sharon.mayo@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111
Telephone: (415) 471-3100
Facsimile:  (415) 471-3400

LAURA E. WATSON (SBN 317155)
laura.watson@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California  90017-5844
Telephone: (213) 243-4000
Facsimile:  (213) 243-4199

JACKSON WAGENER (*pro hac vice*)
jwagener@ascap.com
American Society of Composers, Authors and Publishers
250 West 57th Street
New York, NY 10107
Telephone: (212) 621-6018
Facsimile:  (212) 787-1381

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WB MUSIC CORP., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ROYCE INTERNATIONAL BROADCASTING CORP., et al.,<br><br>　　　　Defendants. | Case No: 5:16-cv-00600-JGB(SPx)<br><br>**NOTICE OF MOTION AND SECOND MOTION FOR POST-JUDGMENT COSTS AND FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Jury Verdict:  March 13, 2018**<br><br>Hearing Date:　May 10, 2021<br>Time:　　　　　9:00 a.m.<br>Judge:　　　　Hon. Jesus G. Bernal<br>Courtroom:　　1 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that, on May 10, 2021, at 9:00 a.m., or as soon as the matter may be heard before the Honorable Jesus G. Bernal, United States District Judge, Central District of California, located at 3470 Twelfth Street, Riverside, California, Courtroom 1, Plaintiffs WB Music Corp., But Father, I Just Want to Sing Music, Hunterboro Music, Universal Polygram International Publishing, Inc., Sony/ATV Tunes LLC, Obverse Creation Music, Nice Hair Publishing, Party Rock Music, Yeah Baby Music, ESKAYWHY Publishing, Uh Oh Entertainment, Divine Mill Music, Fingaz Goal Music, EMI April Music Inc., Hi Mom I Did It, Chebra Music, and Universal Music Corp. (collectively "Plaintiffs") will and hereby do move pursuant to Section 505 of the Copyright Act (17 U.S.C. § 505), Rule 69(a)(1) of the Federal Rules of Civil Procedure, and Sections 685.040, 685.070 and 685.080 of the California Code of Civil Procedure for a second award of full costs, including reasonable attorneys' fees, incurred by Plaintiffs since October 15, 2020 in their continued efforts to enforce the judgment in this case.

This Motion is made following conference of counsel pursuant to L.R. 7-3 that took place on March 22, 2021, but counsel were unable to reach resolution. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities below, the Declarations of Sharon D. Mayo and Jackson Wagener submitted herewith, the Plaintiffs' Memorandum of Costs, the complete files and records of this action, and such other facts as the Court may require at the hearing on the matter.

Dated:  April 9, 2021                                ARNOLD & PORTER KAYE SCHOLER LLP


By: */s/ Sharon D. Mayo*
       Sharon D. Mayo
       Attorneys for Plaintiffs

SECOND MOTION FOR POST-JUDGMENT COSTS AND FEES

1

**TABLE OF CONTENTS**

2
**Page**

3
4      I.     INTRODUCTION ............................................................................1

5      II.    STATEMENT OF RELEVANT FACTS.........................................2

6             A.     Defendants' *Ex Parte* Application to Compel Plaintiffs to
                     Accept Only Partial Payment of Amounts Due .........................3

7
8             B.     Defendants' Opposition to Plaintiffs' Motion for Reasonable
                     Post-Judgment Fees and Costs....................................................4

9             C.     Defendants' Motion to Enforce a Non-Existent "Settlement
                     Agreement" .................................................................................5

10            D.     Defendants' Repeated Attempts to Frustrate the Receivership
11                   and Sale of the Radio Stations ...................................................6

12     III.   PLAINTIFFS' POST-JUDGMENT COSTS, INCLUDING
              REASONABLE ATTORNEYS' FEES, SHOULD BE AWARDED ...............7

13            A.     Plaintiffs May Recover Costs, Including Reasonable Attorney's
14                   Fees, Incurred in Enforcing the Judgment .................................7

15            B.     Plaintiffs are Entitled to Their Attorneys' Fees Because They
                     Are the Prevailing Parties...........................................................9

16            C.     The Amount of Attorneys' Fees Plaintiffs Seek to Recover is
17                   Reasonable ................................................................................11

18                   1.     The Requested Rates Are Reasonable ...........................12

19                   2.     The Number Of Hours Expended By Attorneys Is
                            Reasonable .....................................................................13

20            D.     Plaintiffs Are Entitled To All Other Costs................................14

21     IV.    CONCLUSION .............................................................................15

22
23
24
25
26
27
28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berti v. Santa Barbara Beach Props.*,
    145 Cal. App. 4th 70 (2006) ........................................................................ 8

*BMI v. R. Bar of Manhattan, Inc.*,
    919 F. Supp. 656 (S.D.N.Y. 1996) ....................................................... 12, 13

*Carnes v. Zamani*,
    488 F.3d 1057 (9th Cir. 2007) .................................................................... 8

*Chi-Boy Music v. Charlie Club, Inc.*,
    930 F.2d 1224 (7th Cir. 1991) .................................................................... 9

*Chinese Yellow Pages Co. v. Chinese Overseas Mktg. Serv. Corp.*,
    170 Cal. App. 4th 868 (2008) .................................................................... 8

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986)................................................................................ 14

*Comtys. for Equity v. Mich. High Sch. Athletic Assoc.*,
    No. 1:98-CV-479, 2008 WL 906031 (W.D. Mich. Mar. 31, 2008) ...................... 14

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994).............................................................................. 9, 10

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
    886 F.2d 1545 (9th Cir. 1989) .................................................................. 14

*Gay Officers Action League v. Puerto Rico*,
    247 F.3d 288 (1st Cir. 2001)..................................................................... 12

*Girlsongs & Warner Bros., Inc. v. Starkey*,
    108 F.R.D. 275 (N.D. Cal.1984) ................................................................ 8

*Hamstein Music Co. v. Bait Shack, Inc.*,
    No. 00-4099-RDR, 2001 WL 709402 (D. Kan. May 17, 2001) ......................... 8

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ....................................................................... 11

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)....................................................................................9, 11

*Imperial Bank v. Pim Elec., Inc.*,
   33 Cal. App. 4th 540 (1995) ........................................................................8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979 (2016) .................................................................................9

*Lipsett v. Blanco*,
   975 F.2d 934 (1st Cir. 1992).......................................................................14

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
   81 F.3d 881 (9th Cir. 1996) ..........................................................................9

*MOB Music Pub. v. Zanzibar on the Waterfront, LLC*,
   698 F.Supp.2d 197 (D.D.C. 2010)..............................................................10

*Morales v. San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ........................................................................11

*Odnil Music Ltd. v. Katharsis LLC*,
   No. CIV S-05-0545 WBS EFB PS, 2008 WL 958109 (E.D. Cal. Apr.
   8, 2008) ....................................................................................................7, 14

*Odnil Music v. Katharsis, LLC*,
   2006 Copyright L. Dec. (CCH) ¶ 29,222 (E.D. Cal. 2006)..........................9

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ......................................................................9

*Somerset Songs Pub. v. Bertsos*,
   No. 92 C 3302, 1992 WL 407297 (N.D. Ill. Sept. 11, 1992) ........................8

*TVT Records v. Island Def Jam Music Group*,
   288 F. Supp. 2d 506 (S.D.N.Y. 2003), *reversed and remanded on
   other grounds*, 412 F.3d 82 (2d Cir. 2005)..................................................8

*Unicom Sys., Inc. v. Farmers Group Inc.*,
   No. CV 04-04604 AJW, 2009 WL 10670614 (C.D. Cal. June 29,
   2009) ....................................................................................................12, 13

*VMG Salsoul, LLC v. Ciccone*,
   824 F.3d 871 (9th Cir. 2016) ........................................................................9

iii

*Wertheim, LLC v. Currency Corp.*,
    35 Cal. App. 5th 1124 (2019) .................................................................................. 6

**<u>Statutes</u>**

17 U.S.C. § 505 ..........................................................................................*passim*

Enforcement of Judgments Law, Cal. Civ. Proc. Code §§ 680.010–
    724.260 .............................................................................................*passim*

Fed. R. Civ. P. 69(a)(1) .......................................................................................... 7

Cal. Civ. Proc. Code § 685.040 ........................................................................ 8, 14

Cal. Civ. Proc. Code § 685.070 ........................................................................... 14

Cal. Civ. Proc. Code § 685.080 ........................................................................... 14

iv

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      It has been three years since a jury unanimously found Defendants liable for

4   willful copyright infringement (Dkt. No. 164), and Plaintiffs have yet to receive one

5   cent of the amount legally owed to them by Defendants.  Plaintiffs have diligently

6   pursued payment over these past few years, even taking the extraordinary step of

7   moving to appoint a Receiver to sell Defendants' radio stations to ensure full

8   satisfaction of the amount owed.  (Dkt. No. 239.)  And Defendants have been given

9   every opportunity to pay the amount owed in an orderly and timely fashion.  Instead,

10   Defendants have engaged in a series of dilatory, underhanded tactics aimed at

11   obstructing the Receiver's sale of Defendants' radio stations and preventing payment

12   to Plaintiffs, the Receiver, and other creditors.

13      Defendants' willful campaign of obstruction and delay is still ongoing, forcing

14   Plaintiffs to incur additional attorneys' fees and costs as they continue their attempts

15   to collect on the now approximately $1.7 million second amended judgment.  (Dkt.

16   No. 350, the "Judgment").  Even after Defendants yielded to the Court's orders and

17   finally deposited $1.7 million with the Court, they refused (and still refuse) to

18   stipulate to the unconditional release of those funds—as if this were a "negotiation"

19   in which Plaintiffs must provide consideration for the release of the funds that the

20   jury, this Court, and the Ninth Circuit have determined Defendants must pay.

21      Plaintiffs previously moved for post-judgment fees and costs on October 20,

22   2020.  (Dkt. No. 320.)  The Court granted that motion.  (Dkt. No. 337.)  The first fee

23   motion, however, captured only the attorneys' fees and costs that Plaintiffs incurred

24   through October 14, 2020.  (Dkt. No. 320.)  Regrettably, Defendants' dilatory and

25   obstructionist conduct has continued since that date, necessitating further motion

26   practice, Court intervention, and numerous hearings.  Since October 15, 2020,

27   Defendants have filed a series of unsuccessful motions seeking to:  (1) compel

28   Plaintiffs to accept less-than-full payment of the rightful amount owed to them; (2)

reduce Plaintiffs' attorneys' fees to less than half of what Plaintiffs had requested following two years of Defendants' "scorched earth" litigation tactics; (3) enforce an alleged "settlement agreement" that Plaintiffs never agreed to; and (4) terminate the Receivership and enjoin the court-approved sale of Defendants' radio stations, despite the fact that Plaintiffs (and other interested parties) still have not been paid.

Throughout the past five months, Defendants have also steadfastly sought to frustrate the Receiver's court-approved sale of the radio stations (*see*, *e.g*., Dkt. Nos. 349, 354, 356, 365), disingenuously arguing that the Judgment has been "fully satisfied" (*see* Dkt. No. 366 at 2). Not only has Defendants' conduct required additional briefing, it has also required the parties' attendance at numerous hearings that have, on occasion, lasted nearly three hours. As a result of all of the above, Plaintiffs have incurred significant attorneys' fees and costs since their last motion for post-judgment costs and fees was submitted; Defendants should be held accountable for these additional fees and costs.

By this Motion, Plaintiffs seek to recover the $107,523.20 in attorneys' fees and $308.66 in costs incurred in their continued, extensive efforts to collect on the Judgment since October 15, 2020. Pursuant to section 505 of the Copyright Act and California's Enforcement of Judgments Law ("EJL"), Plaintiffs are, as a matter of law, entitled to recover fees and costs that they have incurred in pursuing Defendants for payment of the Judgment entered in this case.

## II.    STATEMENT OF RELEVANT FACTS[1]

Plaintiffs obtained a judgment against Defendants—the owners of multiple radio stations—for willful copyright infringement following a jury trial in March

---

[1] Plaintiffs' February 26, 2019 Motion to Compel (Dkt. No. 227), the Court's March 22, 2019 Order granting the Motion (Dkt. No. 230), and Plaintiffs' First Motion for Post-Judgment Costs and Fees (Dkt. No. 320) set forth in detail the history of this action, and Defendant Stolz's efforts to avoid paying Plaintiffs' Judgment, through October 14, 2020. To avoid repetition, the facts leading up to this Court's November 23, 2020 Order granting Plaintiffs' First Motion for Post-Judgment Costs and Fees (Dkt. No. 320) are only briefly summarized here.

2018.  The amount of that Judgment is now nearly $1.7 million.  (Dkt. No. 350.)
Following a pattern of behavior that has persisted throughout the nearly five-year
history of this case, Defendants have fought tooth and nail to delay resolution of these
post-judgment proceedings—continuing after Plaintiffs filed their October 2020 fee
motion.  Defendants continue to frustrate the sale of their radio stations, going so far
as to disobey this Court's orders (and arguably committing perjury in the process
(*see*, *e.g.*, Dkt. No. 400)), all while simultaneously refusing to release to Plaintiffs the
funds that Defendants have deposited with the Court.  As a result, Plaintiffs have still
not been paid, these post-judgment proceedings are still ongoing, and Plaintiffs
continue to incur fees and costs in the course of attempting to collect the monies
rightfully due to them.

### A.    Defendants' *Ex Parte* Application to Compel Plaintiffs to Accept Only Partial Payment of Amounts Due

On October 21, 2020, Defendants filed an *ex parte* application to compel
Plaintiffs to accept payment of the $1,249,563.46 owed under the judgment of August
6, 2018 or, in the alternative, for an Order to deposit with the Court such funds.  (Dkt.
No. 321).  Defendants' primary "concern" in filing the *ex parte* application was to
prevent their radio stations from being given away in a purported "fire sale."  (Dkt.
No. 321 at 6.)  But this Court had already addressed and rejected the same "fire sale"
premise in denying a previous *ex parte* application that Defendants had filed just the
month before (Dkt. Nos. 310, 322 at 3).

Moreover, Defendants' proffered payment as of October 21, 2020 fell far short
of what they actually owed to Plaintiffs, which by that time included sanctions
awarded by this Court (Dkt. Nos. 230 and 252), substantial post-judgment costs and
fees awarded by the Ninth Circuit (Dkt. No. 313), and significant post-judgment
attorneys' fees and costs incurred through October 14, 2020 (Dkt. No. 320).  And this
Court had already made clear, in denying the *ex parte* application that Defendants had

3

filed (Dkt. No. 310), that Defendants needed to pay the full judgment "and all other post-judgment costs." (Dkt. No. 327 at 2.)

In short, Defendants could have had no reasonable expectation, in light of the Court's previous *ex parte* orders, that compelling Plaintiffs to accept less than what they were due would stall or otherwise thwart the purported "fire sale." But, as Plaintiffs explained to the Court, given Defendants' numerous representations that they lacked the assets necessary to pay any substantial judgment against them, Defendants' demonstrated intransigence in paying the amounts owed to Plaintiffs in any reasonable timeframe, and Defendants' anticipated effort to terminate the receivership once the August 6, 2018 judgment was paid, Plaintiffs were understandably concerned that acceptance of the partial funds for the August 6, 2018 judgment would leave them unable to collect the full amount that Defendants still owed to Plaintiffs. (Dkt. No. 322.) On October 29, 2020, this Court ordered Defendants to deposit with the Court an amount sufficient to satisfy the August 6, 2018 judgment and interest accrued as of October 13, 2020, but in keeping with its earlier order, yet again made clear that the Court would not terminate the receivership until Defendants had paid "all other post-judgment costs." (Dkt. No. 327.)

> **B.     Defendants' Opposition to Plaintiffs' Motion for Reasonable Post-Judgment Fees and Costs**

On October 15, 2020, Defendants filed an objection to Plaintiffs' First Motion for Post-Judgment Fees and Costs, arguing that Plaintiffs' Motion was untimely pursuant to Local Rule 7-3. (Dkt. No. 316.) As explained in Plaintiffs' Response, the only reason Plaintiffs had filed the Motion early was to prevent yet another instance of Defendants' underhanded gamesmanship: Defendants had indicated to Plaintiffs during the parties' meet and confer that it was their intention to attempt to avoid paying Plaintiffs the nearly $240,000 of costs and fees Plaintiffs incurred during the post-judgment period. (Dkt. No. 317 at 2.) Nonetheless, in an effort to avoid

1   unnecessary controversy, Plaintiffs elected to withdraw, and then refile, the Motion to

2   moot Defendants' objection.  (Dkt. Nos. 319, 320.)

3        On November 11, 2020, Defendants opposed Plaintiffs' re-filed First Motion

4   for Post-Judgment Fees and Costs, claiming that if the Court were "inclined to award

5   any fees" for the approximately two years of extensive post-judgment work

6   Plaintiffs' counsel had undertaken seeking to collect the funds rightfully due, "it

7   should not exceed the range of $74,056 to $95,896."  (Dkt. No. 328 at 16.)  But such

8   a sum would not have come close to adequately compensating Plaintiffs for the

9   substantial hours and efforts spent addressing Defendants' "scorched earth defense

10   and obstruction of Plaintiffs' collection efforts."  (Dkt. No. 330 at 2.)  This fight over

11   fees and costs necessitated further briefing and consultations among Plaintiffs'

12   counsel.  Ultimately, this Court was "particularly unimpressed" by Defendants'

13   arguments, refuting them one-by-one and awarding Plaintiffs more than $230,000 in

14   costs and fees.  (Dkt. No. 337.)

15      **C.**    **Defendants' Motion to Enforce a Non-Existent "Settlement**

16           **Agreement"**

17        On November 23, 2020, Defendants moved to have the Court enforce a

18   purported "settlement agreement."   (Dkt. Nos. 338, 341.)  But there  was never any

19   ambiguity—Plaintiffs had informed Defendants' counsel in clear terms that the

20   parties "***did not*** have a settlement in principle" and should not so represent to the

21   Court.  (Dkt. No. 341 at 4. (emphasis in original)).  And Defendants' filings in the

22   approximately two months since the alleged "settlement" had been formed made

23   absolutely no mention of the alleged "settlement agreement"—an odd omission if

24   Defendants had, in fact, believed a "settlement agreement" to be in place.  (Dkt. No.

25   341 at 5–6.)

26        In reviewing the evidence, this Court noted that Defendants had "aggressively

27   attempt[ed]" to satisfy the August 2, 2018 judgment for weeks after the "settlement

28   agreement" was allegedly in place, and that "Defendants' litigation conduct . . . in no

way suggests it believe[d] a settlement agreement had been reached." (Dkt. No. 344 at 2, 5.)  As a result, this Court found that the parties had "clearly" not agreed on material terms of the purported "settlement agreement," and denied Defendants' motion. (Dkt. No. 344 at 6.)  Defendants' disingenuous attempt to enforce the terms of a "settlement agreement" that "clearly" never existed forced Plaintiffs to incur substantial unnecessary costs.

### D.     Defendants' Repeated Attempts to Frustrate the Receivership and Sale of the Radio Stations

On February 3, 2021, this Court acknowledged receipt of $384,150.00 deposited by the Defendants to account for the funds added to the Judgment by this Court's order of January 13, 2021. (Dkt. Nos. 350, 367).  That same day, Defendants moved to discharge the Receiver, terminate the receivership, and enjoin the court-approved sale of Defendants' radio stations, arguing that the Judgment was "now fully satisfied." (Dkt. No. 369 at 3.)  However, despite depositing with the Court funds sufficient to satisfy the Judgment in this matter (thus stopping any further interest accruing on the Judgment), Defendants have now refused Plaintiffs' repeated requests to stipulate to the actual release of those funds to Plaintiffs. (Declaration of Sharon Mayo ("Mayo Decl.") at ¶¶ 10–11; Declaration of Jackson Wagener ("Wagener Decl.") at ¶¶ 11–12.)  And because Plaintiffs have not yet been paid, the Judgment *has not yet been satisfied.  See Wertheim, LLC v. Currency Corp.*, 35 Cal. App. 5th 1124, 1132–34 (2019) (deposit of funds with the Court by judgment debtor is a "satisfaction" only for purposes of stopping the accrual of interest; "satisfaction [of the judgment] requires payment").

This Court denied Defendants' motion to discharge the Receiver on March 18, 2021, finding that "neither the legal nor the factual equities" favor terminating the receivership at this juncture in the case, as Defendant Stolz "simply cannot [be] trust[ed]" on his own to "satisfy amounts due in the future." (Dkt. No. 413 at 3.)

1    Defendants have since filed an "emergency" appeal to the Ninth Circuit of this

2    Court's order denying their motion to discharge the receiver.

3            Until the Judgment actually is satisfied and Plaintiffs are *actually paid* all

4    amounts that they are owed, Plaintiffs must continue to participate in the litigation by

5    opposing Defendants' *seriatim* baseless filings.  Defendants' attempts from October

6    15, 2020 onwards to interfere with the Receiver's duties and frustrate the sale of these

7    stations has necessitated further briefing from Plaintiffs, the Receiver, and other

8    interested parties (*e.g.*, Dkt. Nos. 335, 354, 356, 360, 361, 365, 373, 376, 377, 378,

9    389, 398, 400, 401, 403, 405, 406).  It has also required Plaintiffs' continued

10   appearance at Court hearings regarding Defendant Stolz's ongoing antics to frustrate

11   the Receiver's court-approved sale of the radio stations—to ensure that Defendants'

12   do not undercut Plaintiffs' right to payment on the Judgment.  Each of these hearings

13   has lasted anywhere from one to three hours, as the Receiver and Receiver's counsel

14   painstakingly has attempted to extract information from Defendant Stolz under oath

15   that should have been provided willingly—and without fanfare—long ago.  Because

16   Plaintiffs must continue to respond to, monitor, and, where necessary, oppose

17   Defendants' efforts to terminate the receivership before its purpose is effectuated,

18   Plaintiffs have been forced to incur significant additional costs.

19   **III.   PLAINTIFFS' POST-JUDGMENT COSTS, INCLUDING**

20   **        REASONABLE ATTORNEYS' FEES, SHOULD BE AWARDED**

21           **A.     Plaintiffs May Recover Costs, Including Reasonable Attorney's**

22           **        Fees, Incurred in Enforcing the Judgment**

23           Rule 69(a)(1) of the Federal Rules of Civil Procedure "provides for application

24   of state law *procedure* for judgment enforcement proceedings [but] states that 'a

25   federal statute governs to the extent it applies.'"  *Odnil Music Ltd. v. Katharsis LLC*,

26   No. CIV S-05-0545 WBS EFB PS, 2008 WL 958109, at *2 (E.D. Cal. Apr. 8, 2008).

27   In California, the procedure for judgment enforcement proceedings is governed by

28   the Enforcement of Judgments Law ("EJL"), codified in sections 680.010 through

724.260 of the California Code of Civil Procedure. *Imperial Bank v. Pim Elec., Inc.*, 33 Cal. App. 4th 540, 546 (1995) (citing statute).

Under the EJL, a judgment creditor is entitled to the "reasonable and necessary costs" incurred in enforcing a judgment, including attorney's fees if "otherwise provided by law." Cal. Civ. Proc. Code § 685.040; *also Carnes v. Zamani*, 488 F.3d 1057, 1060 (9th Cir. 2007) ("Recoverable costs may include attorney fees incurred in enforcing the judgment when, as here, the prevailing party was entitled to attorney fees in the underlying action."); *Berti v. Santa Barbara Beach Props.,* 145 Cal. App. 4th 70, 77 (2006) ("Code of Civil Procedure section 685.040 authorizes postjudgment fees provided by law"). "The express purpose of the 1992 amendment to section 685.040 [of the California Code of Civil Procedure] was to provide for postjudgment attorney fees incurred in enforcing the judgment, thus abrogating [a prior] holding, which deprived a creditor of fees incurred in state and federal courts." *Chinese Yellow Pages Co. v. Chinese Overseas Mktg. Serv. Corp.*, 170 Cal. App. 4th 868, 881 (2008).

Section 505 of the Copyright Act provides for the recovery of such costs and fees. That statute provides that "the court in its discretion may allow the recovery of full costs by or against any party [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. As a matter of course, "full costs" include entitlement to post-trial litigation expenses. *See TVT Records v. Island Def Jam Music Group*, 288 F. Supp. 2d 506, 511 (S.D.N.Y. 2003), *reversed and remanded on other grounds*, 412 F.3d 82 (2d Cir. 2005); *also Girlsongs & Warner Bros., Inc. v. Starkey*, 108 F.R.D. 275, 278–79 (N.D. Cal.1984) (post-judgment costs and fees awarded via "supplemental" motion); *Somerset Songs Pub. v. Bertsos*, No. 92 C 3302, 1992 WL 407297, at *1 (N.D. Ill. Sept. 11, 1992) (same); *Hamstein Music Co. v. Bait Shack, Inc.*, No. 00-4099-RDR, 2001 WL 709402, at *2 (D. Kan. May 17, 2001) (same).

1   Plaintiffs are prevailing parties in the underlying copyright infringement action.

2   As a result, they are entitled under the EJL and Section 505 of the Copyright Act to

3   recover their full costs incurred post-judgment, including their attorneys' fees.

**B.     Plaintiffs are Entitled to Their Attorneys' Fees Because They Are the Prevailing Parties**

6   Pursuant to section 505 of the Copyright Act, "the court in its discretion may

7   allow the recovery of full costs by or against any party," including "a reasonable

8   attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.  Whether

9   to award attorneys' fees is committed to the court's discretion.  *Fogerty v. Fantasy,*

10  *Inc.*, 510 U.S. 517, 534 (1994).  Section 505 "grants courts wide latitude to award

11  attorney's fees based on the totality of circumstances in a case." *Kirtsaeng v. John*

12  *Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016).  The Supreme Court has held that a

13  prevailing plaintiff under a statute so worded "should ordinarily recover an attorney's

14  fee unless special circumstances would render such an award unjust." *Hensley v.*

15  *Eckerhart*, 461 U.S. 424, 429 (1983) (citation and internal quotation marks omitted).

16  When "'deciding whether to award fees under the Copyright Act, the district court

17  should consider, among other things: the degree of success obtained on the claim;

18  frivolousness; motivation; objective reasonableness of factual and legal arguments;

19  and need for compensation and deterrence.'" *VMG Salsoul, LLC v. Ciccone*, 824

20  F.3d 871, 887 (9th Cir. 2016) (quoting *Maljack Prods., Inc. v. GoodTimes Home*

21  *Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996)).

22  An award of attorneys' fees is especially appropriate in cases like this that

23  involve willful and intentional copyright infringement by unauthorized public

24  performance.  *See, e.g.*, *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d

25  1148, 1155 (9th Cir. 2012) (upholding an award of costs and fees where "much of the

26  fees and costs were occasioned by [the defendants'] obfuscation" on issues of fact);

27  *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227, 1230 (7th Cir. 1991)

28  (plaintiffs awarded attorneys' fees of $48,633.37 following trial); *Odnil Music v.*

9

*Katharsis, LLC*, 2006 Copyright L. Dec. (CCH) ¶ 29,222 (E.D. Cal. 2006),

Memorandum and Order Re: Attorneys' Fees and Costs, Case No. 2:05-cv-00545-

WBS-EFB (Dkt. No. 194-1, Ex. 10) (following trial at which plaintiffs were awarded

statutory damages of $12,000, the court awarded plaintiffs costs, including attorneys'

fees totaling $73,545.52); *MOB Music Pub. v. Zanzibar on the Waterfront, LLC*, 698

F.Supp.2d 197, 208–09 (D.D.C. 2010) (granting plaintiffs' motion for summary

judgment, the court awarded statutory damages of $40,000, and costs including

attorneys' fees of $74,712.22).

On at least two occasions, this Court has already found that Plaintiffs have

been entitled to attorneys' fees as the prevailing party in this case.  On July 9, 2018,

this Court declared:

> Overall, the Court finds the *Fogerty* factors weigh in favor of awarding
> Plaintiffs attorneys' fees. . . . Plaintiffs achieved a moderate degree of success,
> some of Defendants' positions were unreasonable, there is no evidence of
> Plaintiffs' improper motive in bringing the action, and awarding fees will
> discourage Defendants and others from infringing. These findings underscore
> the fact the conclusion that awarding fees will further the goals of the
> Copyright Act. The Court exercises its discretion and will award Plaintiffs
> attorneys' fees.

(Dkt. No. 200 at 6.).

And on November 20, 2020, in the course of granting Plaintiffs' request for

post-judgment attorneys' fees and costs incurred through October 14, 2020, this

Court again "determine[d] that Plaintiffs are owed some amount of attorneys' fees"

and declined to reduce the amount of fees sought by Plaintiffs, finding that Plaintiffs'

billing rates were reasonable, the few block-billed time entries did not appear

inflated, and no Ninth Circuit or in-circuit district court authority supported

Defendants' argument that in-house counsel fees were unrecoverable (Dkt. No. 337 at

3–4.)

The *Fogerty* factors remain in favor of awarding attorneys' fees to Plaintiffs,

especially in light of the extensive motion practice and extraordinary relief required

to execute on the Judgment.

## C. The Amount of Attorneys' Fees Plaintiffs Seek to Recover is Reasonable

Since October 15, 2020 Plaintiffs have incurred no less than $107,523.20 in additional fees to enforce their Judgment.  Plaintiffs' fee request is reasonable in light of the market value of the attorney services rendered and the intense activity of the case.  The amount of fee award is determined by applying the "lodestar" formula, which multiplies the number of hours reasonably expended on litigation by a reasonable hourly rate for each attorney.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar figure is presumed to be reasonable, but can be adjusted upwards or downwards by other factors not represented in the lodestar figure. *Morales v. San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996).  "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations."  *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994).

Plaintiffs' request for attorneys' fees is reasonable because they employed well-qualified lawyers who spent a reasonable and necessary number of hours at competitive hourly rates charged by comparable law firms to pursue this case:

- Sharon D. Mayo is a senior counsel at Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), with 29 years of experience litigating copyright cases.  Plaintiffs seek to recover for 34.3 hours of her time on this case for a total amount of $50,350.05.

- Laura E. Watson is a mid-level associate at Arnold & Porter. Plaintiffs seek to recover for 39.6 hours of her time on this case for a total amount of $27,878.40.

- Cassandra E. Havens is a former mid-level associate at Arnold & Porter. Plaintiffs seek to recover for 18.5 hours of her time on this case for a total amount of $11,238.75.

- Jackson Wagener has more than 15 years of experience litigating intellectual property matters.  He was formerly an associate at the law

11

firms of Weil, Gotshal & Manges LLP, and Greenberg Traurig, LLP, in New York, New York, and has been with ASCAP since 2014, currently as Senior Vice President, Business and Legal Affairs.  Plaintiffs seek to recover for 24.4 hours of his time on this case for a total amount of $18,056.00.[2]

(Mayo Decl. ¶¶ 12–14, 16–19, Exs. A, D–F; Wagener Decl. ¶¶ 1–10, Ex. A.)

### 1.    The Requested Rates Are Reasonable

Courts awarding fees determine the reasonable rate for attorney time by reference to the attorney's regular billing rate and the market rate for attorneys of comparable skill and experience.  *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293, 295 (1st Cir. 2001).  The hourly rates that Plaintiffs request for the time of the Arnold & Porter attorneys and Mr. Wagener are reasonable in relation to the hourly rate prevailing in Los Angeles and San Francisco for similar work performed by attorneys of similar experience at competitive national law firms.  The reasonableness of the requested rates is further evidenced by steps taken by counsel to reduce costs by pushing work down to more junior members of the firm.  This Court has previously found the requested hourly rates reasonable (Dkt. Nos. 200 at 6–8, 337 at 4), and any modest increases in the three years since the verdict was issued remain reasonable.

A reliable source of publicly-available information on rates is a recent report on 2017 billing rates published in The National Law Journal.  (Mayo Decl. ¶ 21, Ex. G.)  In the National Law Journal survey, Arnold & Porter's rates compare favorably with two other large firms listed therein with primary offices in California:  Cooley

---

[2] It is entirely appropriate for Plaintiffs to seek attorneys' fees for Mr. Wagener's work on this case.  *See Unicom Sys., Inc. v. Farmers Group Inc.*, No. CV 04-04604 AJW, 2009 WL 10670614 at *6 (C.D. Cal. June 29, 2009) (awarding $243,112.50 in fees incurred by in-house counsel); *also BMI v. R. Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (awarding attorneys' fees to in-house counsel at performance rights organization).  This Court previously approved a rate of $740.00 per hour for the work performed by Mr. Wagener in this matter.  (Dkt. Nos. 200 at 7–8, 337 at 4.)

LLP (Partners: Average $1,100, Associates: $595-$835) and Sheppard, Mullin, Richter & Hampton (Partners: Average $760, Associates: $585-$630). (*Id.* ¶ 21.) Plaintiffs' requested rates also fall within the range of other comparable national law firms with substantial offices in California listed in the National Law Journal article, including those specifically mentioned in the Mayo Declaration. (*Id.* ¶ 22.)

In addition, the fees requested for ASCAP's in-house counsel are reasonable. As the Southern District of New York explained, "[a]ttorney's fees may be awarded for the work of in-house counsel, and an hourly rate based on an estimate of the fee charged by independent counsel for similar services can provide a reasonable basis for calculating such an award if other relevant criteria are satisfied." *R. Bar*, 919 F. Supp. at 661; *see Unicom*, 2009 WL 10670614 at *6 (awarding fees for in-house counsel's work). This Court has already found that an hourly rate of $740.00 for Mr. Wagener's work is reasonable. (Dkt. Nos. 200 at 7–8, 337 at 4.)

### 2. The Number Of Hours Expended By Attorneys Is Reasonable

The number of hours expended by Arnold & Porter is reasonable in light of Defendants' conduct during the post-judgment enforcement period. As explained above, Defendants' ongoing dilatory and obstructionist conduct has required extensive briefings and appearances before this Court since October 15, 2020, as Defendants have sought to delay completion of the court-approved sale of their radio stations, while simultaneously refusing to release the funds that they deposited with the Court to Plaintiffs, as they must do in order to fully satisfy the Judgment. Plaintiffs have incurred significant expenses in enforcing the Judgment and addressing Defendants' delaying tactics and meritless motion practice.

Defendants should not be heard to complain that the requested fees are high or unnecessary—it is due to Defendants' own conduct that such fees have been incurred. Had Defendants made a good-faith attempt to pay the outstanding sums due to Plaintiffs and various other interested parties in a timely fashion, these proceedings would have likely been resolved months, or even years, ago. Instead, Plaintiffs have

13

1   continued to drag out the enforcement process for over two years, including over the

2   past five months since Plaintiffs previously moved for post-judgment costs and fees.

3          Defendants have only themselves to blame for the magnitude of the expense

4   incurred by Plaintiffs in litigating to vindicate their copyright rights.  *See, e.g.*,

5   *Comtys. for Equity v. Mich. High Sch. Athletic Assoc.*, No. 1:98-CV-479, 2008 WL

6   906031, at *16 (W.D. Mich. Mar. 31, 2008) ("[Defendant] cannot choose to 'litigate

7   tenaciously and then be heard to complain about the time necessarily spent by

8   plaintiff in response.'  The time required to litigate increases when the defendant

9   bitterly contests the case, forcing the plaintiffs to win their victory from 'rock to rock

10  and from tree to tree.'" (quoting *City of Riverside v. Rivera*, 477 U.S. 561 (1986), and

11  *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992))); *Frank Music Corp. v. Metro-

12  Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Time spent by plaintiffs'

13  counsel responding to motion or actions by the defendants should not be excluded

14  from the fee award.  Although defendants had the right to play hardball in contesting

15  plaintiffs' claims, it is also appropriate that defendants bear the cost of their

16  obstructionist strategy.") (quotations and alterations omitted).

17          **D.      Plaintiffs Are Entitled To All Other Costs**

18          Under the EJL, Plaintiffs may claim the costs specified in Section 685.070 of

19  the California Code of Civil procedure *as a matter of right*.  These include, for

20  example, attorney's fees as provided by statute.  *See* Cal. Civ. Proc. Code §§ 685.070,

21  685.040.  Pursuant to Section 685.070(b), Plaintiffs have filed an accompanying

22  Memorandum of Costs to recover their attorneys' fees.  (Mayo Decl. ¶ 15, Ex. C.)

23          Plaintiffs may also recover all other enforcement costs by this noticed Motion.

24  Cal. Civ. Proc. Code §§ 685.040, 685.080.  In this respect, the EJL is consistent with

25  Section 505 of the Copyright Act, which allows "the recovery of *full costs*" by the

26  prevailing party in a copyright infringement action.[3]  17 U.S.C. § 505 (emphasis

27  
28  _____
    [3] "[T]o the extent Cal. Civ. Proc. Code § 685.040 conflicts with § 505 of the
    Copyright Act, federal law governs."  *Odnil,* 2008 WL 958109, at *2.

added).  Plaintiffs' other costs include $308.66, which includes duplicating and print jobs, courier and overnight delivery fees, and transcript fees.  (Mayo Decl. ¶ 15, Ex. B.)

Accordingly, to make Plaintiffs whole, the Court should award them post-judgment costs in the amount of $306.88.

## IV.   CONCLUSION

For the foregoing reasons, the Court should award Plaintiffs their full costs, including reasonable attorneys' fees, incurred in enforcing the Judgment in this matter since October 15, 2020, in the total amount of $107,831.86, or in an amount the Court deems is proper under the circumstances.

Dated:  April 9, 2021                 ARNOLD & PORTER KAYE SCHOLER LLP


                                      By:  */s/ Sharon D. Mayo*
                                            Sharon D. Mayo

                                      JACKSON WAGENER (*pro hac vice*)
                                      American Society of Composers, Authors and Publishers

                                      Attorneys for Plaintiffs